King Automobiles, Inc., sued Reynolds and Reynolds Company, Inc., and fictitiously named defendants, alleging breach of contract, negligence, and various fraud claims arising from an agreement under which Reynolds had sold a computer system and system maintenance program to King Automobiles. The transaction involved a printed "master agreement," which contained an arbitration clause and which had certain attachments; the transaction also involved a handwritten agreement. Reynolds moved to compel arbitration and to stay further court proceedings pending arbitration, based upon the arbitration clause in the master agreement. King Automobiles opposed the motion, arguing that its claims were based solely upon the handwritten agreement and were not related to the master agreement. The trial court denied Reynolds's motions to compel arbitration and to stay proceedings.
 I.
During the spring of 1993, Dave King, as president of King Automobiles, met with Bob Fowler, a salesman for Reynolds, to discuss purchasing a computer system known as the ERA 24000. In the course of his discussion with King, Fowler demonstrated a computer system that utilized a new computer processor.
On August 23, 1993, Fowler and Dave King negotiated the purchase of the computer system. King Automobiles alleged that Fowler represented to Dave King that the system utilized a new computer processor and that Dave King then, to buy the system, executed on behalf of King Automobiles a "Reynolds Reynolds Master Equipment Sales, License, and Services Agreement" (the master agreement). The master agreement called for the delivery of a "reconditioned" processor with 28 "user ports," i.e., 28 physical connections on the processing unit where *Page 2 
peripheral devices such as printers, modems, and video monitors could be connected. Fowler and Dave King crossed out the number "28" and wrote in the number "24"; then both of them initialed the change. The arbitration clause in the master agreement stated, in pertinent part:
 "All disputes between [King Automobiles] and Reynolds, except those involving: A) Reynolds' ownership of and title to the Licensed Software and materials and B) [King Automobile's] failure to pay any amount due to Reynolds, arising from or related to this Agreement or the Exhibits, shall be settled by Arbitration."
The master agreement also stated that all equipment, licensed software, material, and services obtained from Reynolds, directly or indirectly, were to be provided only under the terms and conditions of the master agreement. The master agreement stated that it contained the entire understanding of the parties and that it superseded all prior oral or written agreements, communications, and understandings between the parties with respect to the subject matter of the master agreement.
In addition to the master agreement, King Automobiles executed an "Exhibit OS-1," which listed the installation charges associated with the software King Automobiles was purchasing, and an "ERA 24000-RS Addendum," which stated that King Automobiles was acquiring a reconditioned computer processor and would pay a monthly maintenance fee of $1,146 on the processor.
On that same day, King Automobiles compiled a handwritten document stating that "today, 8-23-1993 Bob Fowler and Dave King agreed to the following sale of equipment from Reynolds 
Reynolds to King Automobile." The document went on to list the items purchased. These items were the same as those referred to in the master agreement, but the handwritten document did not list the prices for these items, nor did it list the price for certain in-dealership training and cable installation necessary for the system.[1]
A Reynolds representative approved the master agreement and related exhibits in December 1993 and delivered the fully executed documents to King Automobiles on March 7, 1994. The documents stated that the computer processor King Automobiles bought was "reconditioned" and that it had 24 ports. King Automobiles did not contact Reynolds to discuss, or to object to, the master agreement.
In November 1994, Reynolds representatives arrived to install King Automobiles' computer system. As part of the installation process, a Reynolds representative verified that all of the equipment listed on the Exhibit ER-1 had been delivered to King Automobiles and, at this time, King Automobiles objected to the fact that it was receiving a reconditioned processor rather than a new one. The Reynolds representative provided King Automobiles with a second copy of the master agreement, which showed on its face that King Automobiles had bought a reconditioned computer processor. King Automobiles subsequently filed this action.
 II.
The Federal Arbitration Act provides that written agreements to arbitrate future controversies are enforceable, if the agreement is voluntarily entered and appears in a contract that concerns a transaction involving interstate commerce. 9 U.S.C. § 3
(1970). See Ex parte Gates, 675 So.2d 371 (Ala. 1996); Exparte Jones, 686 So.2d 1166 (Ala. 1996). This Court has held where a contract signed by the parties contains a valid arbitration clause that applies to claims "arising out of orrelating to" the contract, that clause has a broader application than an arbitration clause that refers only to claims "arising *Page 3 
from" the agreement. Old Republic Ins. Co. v. Lanier,644 So.2d 1258 (Ala. 1994).
In opposition to Reynolds's motion to compel arbitration based upon the arbitration clause contained in the master agreement, King Automobiles conceded that the Federal Arbitration Act applied to the master agreement; however, it argued that its claims were based solely on the handwritten agreement, which did not contain an arbitration clause. King Automobiles argued that it contracted for a new computer system and that, because the master agreement stated on its face that the computer system Reynolds sold to King Automobiles was "reconditioned," the master agreement was not related to its claim. King Automobiles claims that the handwritten acknowledgment of the purchase, which does not specify whether the system was to be a new one or was to be a used one, is the actual contract now at issue and, thus, that its claims are not subject to the arbitration clause contained in the master agreement.
We find no merit in King Automobiles' arguments. King Automobiles admittedly sought to buy only one computer system. The master agreement, its attachments, and the handwritten notation were all executed on the same day, and they all related to this one purchase. King Automobiles places great emphasis on minor variations between the list of purchases in the handwritten document and the terms that are contained within the master agreement; however, any such variations do not change the fact that both the handwritten document and the master agreement arose from the negotiations to make a single purchase. King Automobiles is attempting to prove that it contracted for the purchase of a new system but received a reconditioned one; to prove this claim, King Automobiles must necessarily refer to the master agreement, which states on its face that the system was to be a reconditioned one, not a new one. King Automobiles plainly avers in its complaint that it received copies of the master agreement and that that master agreement was for the purchase of the computer equipment and software at issue.
The handwritten document cannot stand on its own as an enforceable contract upon which King Automobiles could base a breach-of-contract claim; the document merely listed the items to be purchased, without naming a price or evidencing consideration flowing from King Automobiles to Reynolds for the equipment.
The facts clearly show that the handwritten document and the master agreement arise from the same single transaction and that both are central to King Automobiles' claims involving the nature and quality of this single acquisition, the terms under which it was to be delivered, and Reynolds's performance of any such terms. Because these claims necessarily relate to and arise from the master agreement, the arbitration clause contained in that agreement must be enforced. The trial court therefore erred in denying Reynolds's motions to compel arbitration and to stay proceedings pending arbitration. Its order denying those motions is reversed and the cause is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, HOUSTON, KENNEDY, and COOK, JJ., concur.
[1] The handwritten document reflected a price of $1,600 for a maintenance program, and King Automobiles argues that this amount differed from that reflected in the master agreement. King Automobiles erroneously relies solely on one of the exhibits that was executed with the master agreement, which lists the "CPU maintenance fee" as $1,146; however, the CPU maintenance fee was only a portion of the overall maintenance fee of $1,600. The total maintenance fee stated by the master agreement and its attached exhibits equals $1,600, the figure reflected in the handwritten document.