SEE, Justice.
The petitioners, Frank Crisona, M.D.; Benjamin Walker, M.D.; and Glenn Till-ery, M.D., filed a declaratory-judgment action against the respondent, Surgery Center Anesthesiology Consultants, P.C. (“SCAC”), seeking a declaration that certain provisions of three separate employment agreements executed by the petitioners are void and unenforceable as restraints of trade under Ala.Code 1975, § 8-l-l(a), and therefore not subject to arbitration.
SCAC counterclaimed against Drs. Cri-sona, Walker, and Tillery, alleging breach of contract, tortious interference with contractual relations, breach of fiduciary duty, conversion, and misappropriation of insurance proceeds; and requesting arbitration of all of SCAC’s counterclaims. Drs. Cri-sona, Walker, and Tillery responded by moving for a preliminary injunction to enjoin SCAC from arbitrating any of its counterclaims. SCAC then moved to compel arbitration of its counterclaims pursuant to an arbitration provision in the employment agreements. After moving to compel arbitration of its counterclaims, SCAC conceded to the trial court that its claims alleging tortious interference with contractual relations, breach of fiduciary duty, conversion, and misappropriation of insurance proceeds were outside the scope of the arbitration provision. The trial court entered an order granting Drs. Cri-sona, Walker, and Tillery’s motion for a preliminary injunction as to arbitration of those counterclaims and granting SCAC’s motion to compel arbitration of its breach-of-contract claims.
Drs. Crisona, Walker, and Tillery moved the trial court to alter, amend, or vacate that part of its order compelling arbitration. The trial court denied that motion. Drs. Crisona, Walker, and Tillery have petitioned this Court for a writ of mandamus directing the trial court to vacate its order compelling arbitration. Because Drs. Crisona, Walker, and Tillery do not challenge the validity or enforceability of the arbitration provision contained in each of their respective employment agreements, we deny the writ.[1]
I.
The trial court found the following facts in its order compelling arbitration: Drs. Crisona, Walker, and Tillery are licensed Alabama physicians practicing in the specialty of anesthesiology. In June 1996, each of those physicians entered into a two-year employment agreement with SCAC to provide anesthesiology services to SCAC’s patients. The three employment agreements are virtually identical and contain the following pertinent provisions:
“2. Term. The initial term of this Agreement shall be for a period of twenty-four (24) months.... After the expiration of the initial term of this Agreement, Employee’s employment shall be extended for successive one-year periods ... unless either party gives the other written notice, at least (60) days prior to the end of the term that the employment is to terminate at the end of such term, or unless otherwise terminated in accordance with this Agreement.”
“5. Exclusive Service. The Employee shall devote such time and attention to rendering medical services on behalf of the Employer as shall be necessary for the Employee to adequately perform Employee’s duties during the term of this Agreement. During the term of this Agreement, the Employee will not, *454 without express written consent of the Employer, engage in the practice of medicine except as an employee of and for and on behalf of the Employer. Patients treated and/or administered to by the Employee shall be considered patients of the Employer, and all records and files pertinent to all such patients of the Employer shall be and shall remain solely the property of the Employer. All fees and charges (including all accounts receivable relating thereto) with respect to any patient to whom the Employee may render any service shall be determined by and be solely the property of the Employer.”
“14. Voluntary Termination. Either party may terminate this Agreement and the performance of the terms and conditions hereunder without cause, and at any time upon ninety (90) days written notice by certified or registered mail.”
“17(c) Solicitation of Employees: Employee agrees that, during the term of this Agreement and for one year following the cancellation or termination of this Agreement, by either party hereto, Employee will not, directly or indirectly, request or cause any employee of Employee [sic] to terminate his or her employment with Employer or such subsidiary or affiliate. Employee agrees that this provision shall survive the termination of this Agreement.”
Each of the employment agreements also contains the following “severability” and “arbitration” provisions:
“24. Severability. Each provision of this Agreement shall be considered sev-erable and if for any reason any provision is determined to be invalid, such invalidity shall not impair or otherwise affect the validity of the other provisions of this Agreement.
“25. Arbitration. Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in accordance with the rules of the American Arbitration Association, one Arbitrator, and shall be enforceable in any court having competent jurisdiction.”
SCAC alleges that in January 1998, Drs. Crisona, Walker, and Tillery ceased performing their duties for SCAC required under the employment agreements and instructed Blue Cross and Blue Shield, a health insurance provider, to pay to a new company any amounts due for services performed by them as employees of SCAC since December 15, 1997. The new company was Huntsville Anesthesiology Consultants (“HAC”), a company formed by Drs. Crisona, Walker, and Tillery. SCAC further alleges that in February 1998 Drs. Crisona, Walker, and Tillery arranged for all nurses and office personnel of SCAC to quit SCAC’s employment and become employees of HAC. SCAC also alleges that after they stopped performing services for SCAC, Drs. Crisona, Walker, and Tillery continued to provide services for, and collect fees from, patients of SCAC and to use SCAC equipment.
In March 1998, Drs. Crisona, Walker, and Tillery filed their declaratory-judgment action. In its counterclaim, SCAC alleges, among other things, that Drs. Cri-sona, Walker, and Tillery breached their employment agreements. Specifically, SCAC alleges that they breached the employment agreements by failing to perform services exclusively for SCAC for a period of two years, as required under Paragraphs 2 and 5; by failing to give 90 days’ written notice, as required under Paragraph 14; by soliciting other SCAC employees after leaving SCAC’s employ, as prohibited under Paragraph 17(c); by treating SCAC’s patients after leaving SCAC’s employ, as prohibited under Paragraph 5; and by taking equipment, insurance proceeds, and accounts receivable of SCAC after leaving the employ of SCAC, *455 as prohibited under Paragraph 5. The trial court held that these breach-of-contract claims fall within the scope of the arbitration provision and, thus, are subject to arbitration.
II.
A petition for the writ of mandamus is the proper procedure to challenge a trial court’s order granting a motion to compel arbitration. See Ex parte Alexander, 558 So.2d 864, 365 (Ala.1990). A writ of mandamus is an extraordinary remedy, and one petitioning for it must show: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court. See Ex parte Conference America, Inc., 713 So.2d 953, 955 (Ala.1998) (citing Ex parte Edgar, 543 So.2d 682, 684 (Ala.1989)). This Court will issue a writ of mandamus requiring a trial judge to set aside an order compelling arbitration “only ... when there is a clear showing that the trial court abused its discretion” in ordering arbitration. See Ex parte McKinney, 515 So.2d 693, 696 (Ala.1987).
Drs. Crisona, Walker, and Tillery do not challenge the validity or the enforceability of the arbitration provision itself as it appears in each of their respective employment agreements. Instead, they challenge the validity and enforceability of certain other provisions in their employment agreements. They argue that the sections of the employment agreements providing for a two-year exclusive practice, a 90-day termination notice, and nonsolicitation of patients and employees are void and unenforceable under Ala.Code 1975, § 8-l-l(a), and therefore are not subject to arbitration. We disagree.
Section 8-l-l(a) provides that “[ejvery contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.” The mere fact that a contract contains a provision that is a restraint of trade does not mean that the entire contract is void under § 8-l-l(a). Dealing with another disputed contract, this Court stated in Pierce v. Hand, Arendall, Bedsole, Greaves & Johnston, 678 So.2d 765, 767 (Ala.1996):
“It is clear from the wording of the statute itself and from the holdings of this Court that under § 8-1-1 (a) a non-competition contract provision is ... ‘void’ only to ‘that extent’ prohibited by § 8-l-l(a). The fact that a promise not to compete is included in a contract does not necessarily render void the entire contract. ‘The contract remains otherwise valid.’ ”
Id. (citations omitted). Thus, even if the disputed provisions in the employment agreements are void under § 8-l-l(a), the other provisions of the employment agreements, including the arbitration provisions, remain otherwise valid. Indeed, each of the employment agreements contains a severability provision stating that the invalidity of a provision “shall not impair or otherwise affect the validity of the other provisions of’ the employment agreement.
Drs. Crisona, Walker, and Tillery argue that void provisions of a contract cannot be subject to arbitration. In support of then-argument, they rely principally on Camaro Trading Co., Ltd. v. Nissei Sangyo America, Ltd., 577 So.2d 1274 (Ala.1991), and Allstar Homes, Inc. v. Waters, 711 So.2d 924 (Ala.1997). Drs. Crisona, Walker, and Tillery’s reliance on those cases is misplaced. In Camaro Trading, this Court affirmed the trial court’s denial of a foreign corporation’s motion to compel arbitration. 577 So.2d at 1275. This Court held that the foreign corporation could not compel arbitration pursuant to an arbitration clause in a contract because the entire contract was unenforceable and invalid as a result of the foreign corporation’s failure to qualify to do business in Alabama. See id. at 1274-75. As this Court reasoned, “ ‘The unenforceability of the contract ex *456 tend[ed] to the contract’s arbitration clause, so there exist[ed] no enforceable agreement between the parties to arbitrate disputes.’ ” Id. at 1275 (quoting a district court’s order in A.J. Taft Coal Co. v. S & H Contractors, Inc., [Ms. 1-88-CV-436-MHS, October 4, 1988] (N.D.Ga.1988) (not reported in F.Supp.), aff'd. on other grounds, 906 F.2d 1507 (11th Cir.1990), cert. denied, 498 U.S. 1026, 111 S.Ct. 677, 112 L.Ed.2d 669 (1991)). Thus, because there was no enforceable arbitration provision, no claims arising out of or relating to the contract were subject to arbitration.
Similarly, in Allstar Homes, the validity and enforceability of the arbitration clause itself was at issue. See 711 So.2d at 926, 929-30. Because a majority of this Court concluded that the case presented issues of arbitrability, namely, whether the parties ever actually agreed to the arbitration clause itself and whether there was clear and unmistakable evidence that the parties agreed to submit the issue of arbitrability itself to arbitration, this Court affirmed the trial court’s order denying arbitration. See id. at 929-30.
Thus, this case is distinguishable from Camaro Trading and Allstar Homes, because in this case neither the validity nor the enforceability of the arbitration provision is at issue. Drs. Crisona, Walker, and Tillery do not contend that their entire employment agreements are void as restraints on trade and, thus, that the arbitration provision is also void. Nor do they directly challenge the validity or the enforceability of the arbitration provision itself. Cf. Investment Management & Research, Inc. v. Hamilton, 727 So.2d 71, 78 (Ala.1999) (“[W]hen a claim of fraud in the inducement is directed toward the arbitration clause itself, the issue is adjudicated by the court. On the other hand, when a claim of fraud in the inducement is directed toward the entire contract, ... the issue is subject to arbitration.”).
The arbitration provision in each of the employment agreements applies to “[a]ny controversy or claim arising out of or relating to” the employment agreement. This Court has held that such language covers a broad scope of disputes and includes more than those disputes relating to the interpretation and performance of the contract itself. See Reynolds & Reynolds Co. v. King Autos., Inc., 689 So.2d 1, 2-3 (Ala.1997); Old Republic Ins. Co. v. Lanier, 644 So.2d 1258, 1262 (Ala.1994). SCAC’s breach-of-contract claims arise out of and relate to the employment agreements and, thus, fall within the scope of the arbitration provision. Therefore, because the making of the arbitration provision in the employment agreements, and the parties’ performance under that provision, are not at issue, an arbitrator must decide whether the challenged provisions are void as restraints of trade and whether Drs. Crisona, Walker, and Tillery breached their respective employment agreements. Accordingly, the trial court did not abuse its discretion in granting SCAC’s motion to compel arbitration of SCAC’s breach-of-contract claims. The petition for the writ of mandamus is denied.
WRIT DENIED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, LYONS, and BROWN, JJ., concur.

. None of the parties raises before this Court the issue whether the employment agreements involve or affect interstate commerce, and nothing in the record indicates that any of the parties raised that issue before the trial court.