MADDOX, Justice.
Ted Stanley Cupps, the defendant in an action pending in the Walker Circuit Court, petitions for a writ of mandamus directing the circuit court to vacate its order striking his jury demands. The substantive question presented is whether a contractual waiver of the right to a jury trial, which expressly applies only to claims “arising under” the contract containing the waiver, bars a jury trial on all of Cupps’s claims against the other contracting party, both his contract claim and his tort claims. For the reasons stated below, we grant the petition in part and issue a writ directing the circuit court to vacate its order insofar as that order related to Cupps’s tort claims against South-Trust Bank of Alabama.
I.
On December 30, 1996, Ted Stanley Cupps, Ellis Taylor, and Egypt Contracting Company, Inc. (“Egypt”), signed a $301,000 revolving note made payable to SouthTrust Bank of Alábama’ (“South-Trust”). Cupps and the other borrowers intended to use the proceeds from the note to finance a coal-mining operation. Under the terms of the note, Cupps, Taylor, and Egypt agreed to be equally liable for the debt, although Egypt was primarily responsible for paying it. Cupps, Taylor, and Egypt collectively pledged a total of nine pieces of mining equipment as collateral for the note.
In August 1997, Egypt filed a petition for bankruptcy protection. At that time, *774 the outstanding balance on the note was $294,000. By the terms of the note, that balance became due immediately when Egypt filed its bankruptcy petition. At first, SouthTrust demanded payment from both Cupps and Taylor, but it eventually decided to pursue only Cupps, because Taylor owed the bank more than $1 million on unrelated loans.
During February and March 1998, Cupps and SouthTrust negotiated a payment plan, referred to by the parties as the “Forbearance Agreement.” This agreement allowed Cupps to pay off the loan over an extended period, with South-Trust retaining an interest in the previously pledged collateral. During these negotiations, Cupps told David Patton, the president of SouthTrust’s branch in Walker County, that he intended to enter into a mining contract with Birmingham Coal & Coke Company, and he told Patton that his revenue from that contract would enable him to pay the balance on the note. Cupps told Patton that the completion of this contract required the use of all of the mining equipment previously pledged as collateral, including the equipment belonging to Egypt. Cupps alleges that Patton promised Cupps that SouthTrust would not repossess any of the equipment during the time specified by the Forbearance Agreement.
Cupps and SouthTrust executed the Forbearance Agreement on March 27, 1998. Under this agreement, SouthTrust agreed to forbear, for 90 days, from pursuing the collection of the outstanding balance of the note; this forbearance was promised in exchange for Cupps’s making monthly payments of $5,000 during that period. The Forbearance Agreement also contained a clause by which Cupps and SouthTrust waived them right to a jury trial in the event a lawsuit was filed relating to a dispute “arising under” the contract. It is undisputed that Cupps read and understood this clause when he executed the contract.
Several weeks after this agreement was executed, SouthTrust repossessed the equipment Egypt had pledged. Cupps says the seizure of this equipment made him unable to meet his contractual obligations to Birmingham Coal & Coke and caused him to abandon the project he had undertaken by the contract with that company.
SouthTrust sold the repossessed equipment at auction and then sued Cupps to recover the amount of debt still outstanding after it had applied the auction proceeds to the debt. Cupps filed a counterclaim against SouthTrust, seeking damages for breach of the Forbearance Agreement; for fraud in the inducement of that agreement; for suppression; and for intentional interference with contractual relations. Cupps also filed a third-party complaint against Taylor, seeking contribution in the event Cupps was found liable for some or all of the outstanding debt.
In each of Cupps’s pleadings he demanded a jury trial for all of his claims. SouthTrust replied with a motion to strike the jury demands. The trial court granted that motion as to the claims between Cupps and SouthTrust, but denied it as to the third-party claims between Cupps and Taylor. Cupps has petitioned this Court for a writ of mandamus directing the trial court to vacate its order insofar as it strikes his jury demand with respect to his claims against SouthTrust.
II.
The standard governing our review of an issue presented in a petition for the writ of mandamus is well established:
“[M]andamus is a drastic and extraordinary writ to be issued only where there *775 is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte Edgar, 543 So.2d 682, 684 (Ala. 1989).
Mandamus is an appropriate remedy where the availability of a jury trial is at issue, as it is in this case. Ex parte Merchants Nat’l Bank of Mobile, 257 Ala. 663, 665, 60 So.2d 684, 686 (1952).
III.
The legal issue presented by Cupps’s petition is whether the jury-waiver clause in the Forbearance Agreement applies to all of Cupps’s claims against SouthTrust — claims alleging breach of the Forbearance Agreement; fraud in the inducement; suppression; and intentional interference with contractual relations. The clause provides as follows:
“d. WAIVER OF RIGHT TO JURY TRIAL. The parties desire to avoid additional time and expense related to a jury trial of any disputes arising under this Forbearance Agreement or the Loan Documents. Accordingly, with respect to any such dispute, the Bank, the [sic] and Cupps each hereby mutually waive their right to a trial by jury and consent to the granting of such legal or equitable relief as is deemed appropriate by the judge of a court of competent jurisdiction. The parties acknowledge and agree that this waiver is knowingly, freely and voluntarily given, is made after opportunity to consult with counsel about this waiver, and is in the best interests of each party.”
(Emphasis added in the text of the clause). Cupps does not dispute the validity of the jury-waiver clause. He does argue, however, that none of his claims “arise under” the Forbearance Agreement or the original loan documents; therefore, he contends, the waiver clause does not apply to any of his claims.
Article I, § 11, of the Alabama Constitution of 1901 provides “[t]hat the right of trial by jury shall remain inviolate.” The allegiance of Alabama’s legal system to this principle is reaffirmed in Rule 38(a), Ala.R.Civ.P., which states, “The right of trial by jury as declared by the Constitution of Alabama ... shall be preserved to the parties inviolate.” Thus, this Court’s mandate to preserve the right to a trial by jury is clear when that right was available at common law, Ex parte Jones, 447 So.2d 709, 711 (Ala.1984), if it has not been abridged by Federal law, see Green Tree Fin. Corp. v. Shoemaker, 775 So.2d 149, 150 (Ala.2000) (stating that arbitration clauses will be enforced in Alabama to the extent required by Federal law), and has not been expressly waived by contract, Gaylord Dep’t Stores of Alabama, Inc. v. Stephens, 404 So.2d 586, 588 (Ala. 1981) (adopting decisions from other jurisdictions holding that the right to a jury trial may be waived by contract).
In cases, such as this case, that involve contractual waivers, we give the text of the waiver a narrow and strict construction, in deference to the constitutional guarantee of the right to a jury trial. In Mall, Inc. v. Robbins, 412 So.2d 1197, 1200 (Ala.1982), this Court stated, “[the] same public policy that applies the rule of strict construction will likewise limit the scope of operation of a jury waiver agreement to those controversies directly related to and arising out of the terms and provisions of the overall agreement containing the jury waiver provisions.” Thus, we must strictly construe the operative language of the jury-waiver clause in the *776 present case — that language provides that the waiver applies to “any disputes arising under [the] Forbearance Agreement or the Loan Documents.” (Emphasis added.)
This Court, when reviewing jury-trial waivers, has typically been asked to determine the meaning of the term “arising under” (and this is the phrase used in the Forbearance Agreement) when the underlying dispute relates to the scope of a jury waiver in a contract containing an arbitration clause. See generally Green Tree Fin. Corp. v. Shoemaker, supra; Green Tree Fin. Corp. v. Vintson, 753 So.2d 497 (Ala.1999); Capital Inv. Group, Inc. v. Woodson, 694 So.2d 1268 (Ala.1997); and Koullas v. Ramsey, 683 So.2d 415 (Ala. 1996). In this kind of case, our conclusion generally depends on whether the parties to the contract intended to arbitrate then* claims and to waive their right to a jury trial for the issues raised by the claims. See Vintson, 753 So.2d at 505 (noting that the scope of an arbitration agreement “ ‘is a matter of contract interpretation’ ”), and Carl Gregory Chrysler-Plymouth, Inc. v. Barnes, 700 So.2d 1358, 1360 (Ala.1997) (noting that “[t]he first task of this Court, when reviewing an arbitration provision, is to determine whether the parties agreed to arbitrate the dispute at hand.”). In the present case, this Court is presented with the same sort of question: Did Cupps, in agreeing to the waiver clause of the Forbearance Agreement, intend to waive his right to a jury trial on such claims as he has made against SouthTrust? Our cases suggest that the phrase “arising under” is analogous to “arising from,” a phrase this Court has previously construed as having a narrowing effect on the scope of arbitration clauses. In Reynolds & Reynolds Co. v. King Automobiles, Inc., 689 So.2d 1 (Ala.1996), this Court, in explaining its construction of the term “arising from,” stated: “This Court has held [that] where a contract signed by the parties contains a valid arbitration clause that applies to claims ‘arising out of or relating to’ the contract, that clause has a broader application than an arbitration clause that refers only to claims ‘arising from’ the agreement.” 689 So.2d at 2-3. In Koullas v. Ramsey, supra, a case involving a similar contract-construction issue, this Court stated that the term “arising under,” like the term “arising from,” similarly narrowed the scope of arbitration agreements and excluded claims that did not require a reference to, or a construction of, the underlying contract. 683 So.2d at 418. This Court explained:
“Where, as here, an arbitration clause refers to disputes or controversies ‘arising under’ an agreement, the clause will apply only to those claims arising under the terms of the agreement, and it will not extend to matters or claims independent of, or merely collateral to, the agreement. Old Republic Ins. Co. v. Lanier, 644 So.2d 1258 (Ala.1994). We agree that, in order for a dispute to be characterized as arising out of or relating to the subject matter of the contract, and thus subject to arbitration, it must at the very least raise some issue that cannot be resolved without a reference to or construction of the contract itself. Dusold v. Porta-John Corp., 167 Ariz. 358, 807 P.2d 526 (Ct.App.1990); Terminix Int’l Co., L.P. v. Michaels, 668 So.2d 1013 (Fla.Dist.Ct.App.1996); Greenwood v. Sherfield, 895 S.W.2d 169 (Mo.App. 1995).”[1]
Koullas, 683 So.2d at 417-18.
Cupps’s claims alleging fraudulent inducement, suppression, and tortious inter *777 ference with contractual relations do not require a reference to, or a construction of, the Forbearance Agreement or the loan documents. The fraudulent-inducement claim and the suppression claim allege torts relating to the formation of the contract and not to the contract itself. The claim alleging tortious interference with contractual relations is even more independent from the contract, because it does not deal with the contract formation whatever. All three of these claims may be resolved without referring to the terms of the Forbearance Agreement or the loan documents; therefore, while these claims may indeed arise out of the business relationship between Cupps and SouthTrust, they cannot be said to “arise under” that agreement or those documents. Consequently, applying the principle set out in Mall, Inc. v. Robbins, supra, we hold that Cupps did not contractually waive his right to a jury trial as to these three tort claims. We grant Cupps’s petition insofar as it relates to those claims, and we direct the circuit court to set aside its order denying Cupps’s demands for a jury trial on those claims.
We reach a different conclusion with respect to Cupps’s claim alleging breach of the Forbearance Agreement. A claim alleging breach of contract necessarily requires a construction of the contract upon which the claim is based. See generally Tanner v. Church’s Fried Chicken, Inc., 582 So.2d 449, 452 (Ala. 1991) (interpreting a purchase agreement to determine whether the terms of that agreement were breached). Therefore, we conclude that Cupps’s claim alleging breach of the Forbearance Agreement “arises under” that agreement and, therefore, that Cupps waived his right to a jury trial as to this claim. Consequently, we deny Cupps’s petition insofar as it relates to this claim.
PETITION GRANTED IN PART AND DENIED IN PART AND WRIT ISSUED.
HOOPER, C.J., and COOK, LYONS, and JOHNSTONE, JJ., concur.

. After making this statement, the Court in Koullas continued: "If there is no such connection between the claim and the contract, then the claim could not reasonably have *777 been intended to be subject to arbitration within the meaning of a clause that required arbitration only for claims ‘arising out of or related to’ the contract.” 683 So.2d at 418. This particular statement, however, is dictum in that the arbitration clause in that case did not include the language “arising out of or related to.” Thus, while it would appear from this sentence that the term "arising out of or related to” receives the same construction as “arising from” and "arising under,” our cases clearly treat these two classes of terms differently. See Reynolds & Reynolds Co., 689 So.2d at 2-3.