775 So.2d 149 (2000)
GREEN TREE FINANCIAL CORPORATION
v.
Judie Gayle SHOEMAKER and Olen McPherson.
1980978.
Supreme Court of Alabama.
July 14, 2000.
Robert A. Huffaker and Rachel Sanders-Cochran of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for appellant.
Ira B. Colvin, Reform, for appellees.
HOUSTON, Justice.[1]
Judie Shoemaker and Olen McPherson ("the plaintiffs") purchased a mobile home on February 25, 1995. The purchase was financed by the defendant, Green Tree *150 Financial Corporation ("Green Tree").[2] In connection with the purchase of this mobile home, the plaintiffs executed a "Manufactured Home Retail Installment Contract and Security Agreement," which listed the seller of the mobile home as Melody Mobile Homes, Inc., and the assignee of the contract as Green Tree.
On October 1, 1998, the plaintiffs sued Green Tree, alleging that Green Tree had invaded their privacy. The plaintiffs had become delinquent in their monthly payments under the contract; they allege that after they became delinquent, Green Tree began a systematic course of harassing them and invading their privacy. On November 12, 1998, Green Tree moved to compel arbitration of the plaintiffs' claims; the court denied that motion on January 22, 1999. Green Tree moved the trial court to alter, amend, or vacate its order. The trial court denied the motion, and Green Tree now appeals the denial of its motion to compel arbitration. We reverse and remand.
In Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the United States Supreme Court held that the Federal Arbitration Act ("FAA") governs all contracts falling within Congress's power to regulate under the Commerce Clause. We have since recognized that an arbitration provision will be enforced in Alabama to the extent that enforcement is required by federal law. See, Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (Ala.1995).
As part of the Manufactured Home Retail Installment Contract and Security Agreement, the plaintiffs agreed to an arbitration provision, which stated:
"ARBITRATIONAll disputes, claims or controversies arising from or relating to this Contract or the parties thereto, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). This agreement is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL ETHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN) [sic]. The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this Contract. The parties agree and understand that the arbitrator shall have all powers provided by law and the Contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto [sic] the contrary, Assignee retains an option to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home, or to foreclose on the Manufactured Home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to *151 enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by Assignee pursuant to this provision."
(Capitalization original; other emphasis added.)
The plain language of this provision requires the plaintiffs to submit to arbitration all controversies that arise from, or relate to, the contract. That language clearly encompasses the plaintiffs' claim alleging invasion of privacy, a claim that arose out of the underlying business transaction of collecting delinquent monthly payments.
In refusing to enforce the arbitration provision, the trial court relied upon Ex parte Discount Foods, Inc., 711 So.2d 992 (Ala.1998) (holding that intentional torts are not encompassed in broad arbitration clauses). However, since the trial court entered its order refusing to compel arbitration, we have limited the holding in Ex parte Discount Foods by our decision in Green Tree Financial Corp. v. Vintson, 753 So.2d 497 (Ala.1999). In Vintson, we wrote:
"The Vintsons, relying on Ex parte Discount Foods, Inc., 711 So.2d 992 (Ala.1998) (plurality) (stating that an arbitration provision was not broad enough to include intentional-tort claims), argue that they should not be required to arbitrate their intentional-tort claims. The Vintsons' reliance on Discount Foods is misplaced. Whether an arbitration provision encompasses a party's claims `is a matter of contract interpretation, which interpretation is guided by the intent of the parties, and which intent, absent ambiguity in the clause, is evidenced by the plain language of the clause.' Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102, 110 (Ala.1995). The language of the arbitration provision in this case is not ambiguous. Under the plain language of the provision, the Vintsons agreed to arbitrate all disputes `arising from or relating to' the contract. `This Court has held [that] where a contract signed by the parties contains a valid arbitration clause that applies to claims "arising out of or relating to" the contract, that clause has a broader application than an arbitration clause that refers only to claims "arising from" the agreement.' Reynolds & Reynolds Co. v. King Automobiles, Inc., 689 So.2d 1, 2-3 (Ala.1996) (emphasis in original). All of the Vintsons' claimsthat Green Tree fraudulently induced them to purchase a mobile home, that it violated the Alabama Mini-Code, and that it breached its agreement to pay off several preexisting debtsarise from or relate to the installment contract.... Accordingly, the plain language of the arbitration provision encompasses the Vintsons' claims."
753 So.2d at 504-05. Like the tort alleged in Vintson, the invasion of privacy and harassment alleged by these plaintiffs arose out of the financial transaction entered into between the parties. There can be nothing more "relating to" a financial transaction than the efforts a party takes to collect a debt created as a part of that transaction. Therefore, this case is distinguishable from Ex parte Discount Foods, especially considering that Vintson has limited Ex parte Discount Foods.[3]
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SEE, and BROWN, JJ., concur.
*152 LYONS, J., concurs in the judgment.
COOK, J., concurs in the judgment, but dissents from the rationale.
JOHNSTONE and ENGLAND, JJ., dissent.
LYONS, Justice (concurring in the judgment).
I share Justice Cook's view that Ex parte Discount Foods, Inc., 711 So.2d 992 (Ala.), cert. denied, 525 U.S. 825, 119 S.Ct. 71, 142 L.Ed.2d 56 (1998), is distinguishable from this present case. I therefore agree with him that the statement in the majority opinion about the current status of Discount Foods is not necessary to a decision in this case.
COOK, Justice (concurring in the judgment, but dissenting from the rationale).
The plaintiffs Judie Shoemaker and Olen McPherson purchased a mobile home with financing provided by Green Tree Financial Corporation ("Green Tree"). They fell behind in their payments, and Green Tree began telephoning their residence in efforts to collect installments due under the contract. As a result of these telephone calls, the plaintiffs sued Green Tree, alleging "invasion of privacy" and "harassment." Greentree moved to compel arbitration. The trial court, relying on Ex parte Discount Foods, Inc., 711 So.2d 992 (Ala.1998), denied the motion.
The majority reverses the order denying arbitration. In justifying this result, however, the majority "severely limit[s]" Discount Foods. More specifically, the majority states:
"At best, this case and [Green Tree Financial Corp. v. Vintson, 753 So.2d 497 (Ala.1999),] have severely limited the holding in Ex parte Discount Foods. Ex parte Discount Foods can now stand only for the proposition that an arbitration clause should not be enforced to require arbitration of a claim alleging an intentional tort that is in no way related to the underlying transaction that gave rise to the arbitration agreement."
775 So.2d at 151 n. 3 (emphasis added). In this, the majority goes too far.
Even without the majority's "severe limit[ation]" of Discount Foods, this case is not inconsistent with Discount Foods, a case in which I fully concurred. In fact, Discount Foods is easily distinguishable from this case. That case involved an action by Discount Foods, Inc., against the Supervalu Company and others, alleging that Supervalu had intentionally interfered with business relations between Discount Foods and a third party. Id. at 993. Those relations arose out of the efforts of Discount Foods and the third party "to acquire a lease of commercial real estate." Id. Supervalu sought to compel arbitration, on the basis of provisions "contained in retail agreements ... between Supervalu and Discount Foods for the supply of groceries and other inventory items to Discount Foods." Id. This Court, very correctly, issued a writ of mandamus directing the trial court to vacate an order compelling arbitration, on the ground that "the disputes involved ... [were] in no way associated with" the contractual relations between Discount Foods and Supervalu, and that "the arbitration provision found in the retail agreements between Discount Foods and Supervalu was not intended by the parties to force arbitration in regard to allegations of intentional torts that [were] unrelated to their contractual dealings." Id. (emphasis added).[4]
I concur in the judgment in this case, on the ground that the plaintiffs' claims are *153 related to their contractual dealings with Green Tree. In this connection, I note that the plaintiffs are signatories to the contract with Green Tree. The plaintiffs allege that Green Tree, in telephone conversations with the plaintiff Judie Shoemaker's daughter, threatened to "throw her out" and stated that it "hoped the house was full of kids so they could throw them out in the street." Brief of Appellees, at 4. They also allege that Green Tree "contacted Shoemaker's elderly mother on more than twenty occasions and told her to get the Shoemakers out of the house, they were `coming to pull the mobile home.'" Id. They further allege that Green Tree "contacted other persons and discussed [the plaintiffs'] situation with them, causing [the plaintiffs] to suffer shame, stress and humiliation." Id. at 5.
We are not told who these "other persons" are. Additionally, neither the daughter nor the mother is a party in this case. Clearly, Green Tree had no right, under the installment contract, to "harass" anyone other than the signatories. It is entirely unclear, however, how Green Tree's alleged harassment of the daughter, the mother, and the anonymous "others" would support an action by these plaintiffs. Moreover, such "harassment," insofar as it does impact the plaintiffs, "relates to" the installment contract and the plaintiffs' failure to make the installment payments. Consequently, claims regarding it are arbitrable.
But on its face this case is easily distinguishable from Discount Foods. Indeed, the majority acknowledges as much when it tacitly concedes that Discount Foods involved "an intentional tort that [was] in no way related to the underlying transaction." 775 So.2d at 151 n. 3. This is not such a case. For these reasons, I concur in the judgment holding that the plaintiffs' claims are arbitrable, but I dissent from the rationale insofar as it purports to "severely limit[]" the application of Discount Foods.
JOHNSTONE, Justice (dissenting).
I respectfully dissent for the reasons stated in my dissents in Green Tree Financial Corp. v. Vintson, 753 So.2d 497, 505 (Ala.1999); Ex parte Perry, 744 So.2d 859 (Ala.1999); Ex parte Smith, 736 So.2d 604 (Ala.1999); Ryan's Family Steak Houses, Inc. v. Regelin, 735 So.2d 454 (Ala.1999). See also my special writing in Patrick Home Center, Inc. v. Karr, 730 So.2d 1171 (Ala.1999).
NOTES
[1] This case was originally assigned to another Justice on this Court; it was reassigned to Justice Houston on May 2, 2000.
[2] Green Tree Financial Corporation has since changed its name to Conseco Finance Corporation.
[3] At best, this case and Vintson have severely limited the holding in Ex parte Discount Foods. Ex parte Discount Foods can now stand only for the proposition that an arbitration clause should not be enforced to require arbitration of a claim alleging an intentional tort that is in no way related to the underlying transaction that gave rise to the arbitration agreement.
[4] The Court's reliance today on Vintson is also misplaced. Vintson contained allegations of (1) fraud in the inducement (2) violations of the Mini-Code, and (3) breach of an alleged agreement to pay off certain debts. This Court held that these claims did "relate to the installment contract" and, consequently, were arbitrable. 753 So.2d at 504-05. Vintson did not address any claims alleging invasion of privacy or harassment. Thus, it is also distinguishable from this present case.