620 S.E.2d 86

WELLMAN, INC., a Delaware Corporation, Plaintiff,

v.

SQUARE D COMPANY, a Delaware Corporation, R.D.H. Consultants, Inc., a North Carolina Corporation, Cameron & Barkley Company, a Delaware Corporation, Zimmer A.G. a division of MG Technologies AG, a German Corporation, individually and as co-venturer in the Zimmer/Raytheon Consortium, Fluor Enterprises, Inc., a California Corporation, and Fluor Facility & Plant Services, Inc., a South Carolina Corporation and Washington Group International, Inc., Ohio Corporation, successor to Raytheon Engineers & Constructors, Inc., Defendants,

of whom Washington Group International, Inc., an Ohio Corporation, successor to Raytheon Engineers & Constructors, Inc., and Zimmer/Raytheon Consortium are the Appellants,

and

Wellman, Inc., a Delaware Corporation, and Zimmer A.G., a Division of MG Technologies, a German Corporation, Individually are the Respondents.

No. 4018.

Court of Appeals of South Carolina.

Heard May 11, 2005.

Decided July 25, 2005.

Withdrawn, Substituted and Refiled Sept. 21, 2005.

Rehearing Denied Sept. 21, and Nov. 17, 2005.

Henry P. Wall, Wesley D. Peel, and Bruner, Powell, Robbins, all of Columbia, for Appellants.

Alan M. Warshauer, of New York City; Elizabeth Van Doren Gray, A. Jackson Barnes and J. Calhoun Watson, all of Columbia; Mark W. Buyck, Jr. and Marian H. Lee, both of Florence; Thomas A. McDonald, Mark D. Howard, David S. Allen and Thomas A. Smith, all of Chicago, IL, for Respondents.

## ORDER DENYING PETITION FOR REHEARING

PER CURIAM.

Appellant has filed a Petition for Rehearing. Respondent has also filed a Petition for Rehearing with request for oral argument and a Motion to Supplement the Record. After a careful consideration of the Petitions for Rehearing, the Court is unable to discover that any material fact or principle of law has been either overlooked or disregarded and hence, there is no basis for granting a rehearing.

It is, therefore, ordered that the Petitions for Rehearing, as well as the request for oral argument be denied. The Motion to Supplement the Record is granted. The Court withdraws the filed opinion and substitutes the attached opinion.

s/ C. Tolbert Goolsby, J.

s/ Thomas E. Huff, J.

s/ H. Samuel Stilwell, J.

HUFF, J.:

Washington Group International, Inc., the successor to Raytheon Engineers and Constructors, Inc. (Raytheon/Washington), appeals the trial court's denial of its motion to compel arbitration on behalf of itself and the Zimmer/Raytheon Consortium. We affirm in part and reverse in part.

## FACTS

Raytheon Engineers and Constructors, Inc. and Zimmer AG entered into a written agreement to form Zimmer/Raytheon Consortium for the purpose of constructing a manufacturing facility for Wellman, Inc. The Consortium agreement provides: "Zimmer shall act as the CONSORTIUM LEADER for the term of this AGREEMENT." In addition, the agreement contains the following arbitration provision:

10.9.1 Claims between the MEMBERS regarding their respective rights and obligations under this AGREEMENT and/or under the CONTRACT shall be first addressed by the Management Committee. If the Management Committee is unable to unanimously settle such claims within thirty (30) days, its settlement shall be determined according to Articles 10.9.2 through 10.9.4 below.

10.9.2 Not later than ninety (90) days after the end of said thirty day period either party may appeal its claim to non-binding mediation to the American Arbitration Association to be held in the City of Columbia, South Carolina, under its then effective rules and regulations.

10.9.3 Within thirty (30) days of the MEMBER'S failure to reach agreement under such mediation and declaring an impasse or the conclusion of the mediation, either MEMBER may submit the claim to binding arbitration in accordance with the South Carolina Uniform Arbitration Act (S.C.Code § 15–48–10 et seq.) to be held in the City of Columbia, South Carolina.

. . . .

10.9.4 If and only if after all said measures have been undertaken by either MEMBER submit the claim to a Court of Competent Jurisdiction and then only to enforce such decision on its own terms or have it voided as arbitrary and capricious.

The agreement also contains an *ipso facto* provision stating, among other things, if a member of the Consortium becomes insolvent and commences a bankruptcy proceeding, the "Insolvent MEMBER (and/or receiver, trustee, liquidator or custodian) shall cease to have any further decision-making authority or vote under this AGREEMENT and the CONSORTIUM shall not require the vote, approval or authority of the Insolvent MEMBER as otherwise may have been required under this AGREEMENT."

The Consortium entered into a contract with Wellman for the construction of the facility. This agreement also contained a provision subjecting "[a]ny controversy or claim arising out of or relating to this CONTRACT or any breach thereof" to

"binding arbitration in accordance with the South Carolina Uniform Arbitration Act (S.C.Code § 15–48–10 *et seq.*)."

Subsequent to the construction of the facility, an issue arose about payments due to Raytheon and Zimmer from Wellman and other issues. As Raytheon and Zimmer disagreed as to how to handle these closeout issues, they entered into a settlement agreement to resolve the dispute. The settlement agreement contained the following provision regarding the leadership of the Consortium:

4. *Raytheon as Leader of Remaining Consortium Activities*

(a) The rights and obligations of Raytheon and Zimmer under the Consortium Agreement are deemed completed and discharged in all respects and are of no further force or effect, except (i) for the sole and exclusive purpose of serving as the vehicle for Raytheon to assert claims against Wellman and recover damages thereby as contemplated by this Agreement (and to defend any claims which may be asserted by Wellman in connection therewith), and (ii) as otherwise specifically provided herein.

(b) Raytheon shall hereafter become the Consortium "Leader" pursuant to Article 4 of the Consortium Agreement for the purposes described in paragraph (a) of this Section, specifically including the unilateral right to conduct negotiations with Wellman, to settle and resolve all claims and disputes with Wellman on behalf of the Consortium, but solely for the benefit of Raytheon, excluding, however, only those claims and disputes excepted from the application of Section 12 herein.

The settlement agreement also contained the following arbitration provision:

16. *Arbitration*

Any dispute or controversy between the parties arising out of or relating to this Agreement which cannot be settled amicably shall be resolved by arbitration in the manner provided for in Article 10.9 of the Consortium Agreement, the provisions of which are incorporated herein by reference as if set forth at length herein.

After Raytheon submitted its claim to Wellman, an electric malfunction occurred in the facility, and Wellman suffered

damages in excess of eight million dollars. Subsequently, Raytheon filed for bankruptcy pursuant to chapter 11 of the United States Bankruptcy Code. Washington Group International, Inc. acquired assets of Raytheon, including the division responsible for the Wellman project. Wellman ultimately filed suit against Raytheon/Washington and Zimmer, individually and as Consortium members, for damages associated with the electrical malfunction. Zimmer filed cross-claims against Raytheon/Washington for equitable and contractual indemnity.

Raytheon/Washington filed a motion to stay Wellman's claims against it and to compel arbitration based on the arbitration provision in the Consortium's agreement with Wellman. Zimmer opposed Raytheon/Washington's motion, asserting that it had the authority to speak for the Consortium and it preferred to resolve the suit in litigation. Raytheon/Washington also filed a motion to stay Zimmer's cross-claim and to compel arbitration.

After reviewing the memoranda submitted by all the parties, the trial court denied Raytheon/Washington's motions to compel arbitration. The trial court found, pursuant to the *ipso facto* provision in the Consortium agreement, Raytheon lost its decision making authority regarding Consortium matters due to its insolvency and thus Raytheon did not have the right to demand arbitration in this matter when that action was contrary to the desires of Zimmer. In addition, the court found "that the interests of the parties and the court are best served by resolution of all related claims in one judicial forum." Thus it held all of the claims by Wellman should be litigated in court. Raytheon/Washington appeals the trial court's order.

## STANDARD OF REVIEW

The determination of whether a claim is subject to arbitration is subject to *de novo* review. *Vestry Church Wardens of Church of Holy Cross v. Orkin Exterminating Co.*, 356 S.C. 202, 206, 588 S.E.2d 136, 138 (Ct.App.2003). "Nevertheless, a circuit court's factual findings will not be reversed on appeal if there is any evidence reasonably supporting the findings." *Thornton v. Trident Med. Ctr., L.L.C.*, 357 S.C. 91, 94, 592 S.E.2d 50, 51 (Ct.App.2003).

## LAW/ANALYSIS

### I. Intertwining doctrine

Raytheon/Washington argues the trial court erred in denying its motions to compel arbitration based on its finding that "the interests of the parties and the courts are best served by resolution of all related claims in one judicial forum." We agree.

Wellman urges this court to adopt the intertwining doctrine. The Colorado Supreme Court explained the purpose of this doctrine is to prevent inconsistent determinations by different forums. *City and County of Denver v. District Court In For City and County of Denver*, 939 P.2d 1353, 1369 (Colo.1997). The court elucidated:

> [The application of this doctrine] involves an analysis of the legal and factual issues relative to each of the factual allegations in the complaint. The court will consider whether the arbitrator would be required to "review the same facts needed to establish the ... [non-arbitrable claim]"....
> If the factual determinations and legal conclusions are inextricably intertwined, then the court must not sever the action. To hold otherwise would risk inconsistent determinations and could result in the arbitrators infringing upon the courts duty to decide the [non-arbitrable claim]....

*Id.* (quoting *Lawrence St. Partners, Ltd. v. Lawrence St. Venturers*, 786 P.2d 508, 511 (Colo.Ct.App.1989)).

The United States Supreme Court expressly rejected the intertwining doctrine in *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The court held the Federal Arbitration Act (FAA)[1] requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums. *Id.* at 217, 105 S.Ct. 1238. The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9

---

1. 9 U.S.C.A. § 1 *et seq.* (1999).

U.S.C. 2 (1999). Considering this provision, the Supreme Court found:

> By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. 3, 4. Thus, insofar as the language of the [FAA] guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

*Dean Witter Reynolds,* 470 U.S. at 218, 105 S.Ct. 1238.

Similarly, the Arizona Court of Appeals rejected the intertwining doctrine as being inconsistent with its state arbitration act. *Hallmark Indus., L.L.C. v. First Systech Intl.,* 203 Ariz. 243, 52 P.3d 812 (Ct.App.2002). The Arizona Arbitration Act contains identical language to our Arbitration Act, providing:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

S.C.Code Ann. 15–48–10(a) (2005); A.R.S. 12–1501 (West 2003).

The Arizona Court of Appeals found, like the Supreme Court in *Dean Witter Reynolds,* that "this language does not confer discretion on a trial court to ignore a valid arbitration agreement merely because a case involves related arbitrable and non-arbitrable claims, even if the claims are factually related and difficult to separate." *Hallmark,* 52 P.3d at 814.

The South Carolina Arbitration Act, like the Arizona Arbitration Act, sets forth the procedure for when a case involves arbitrable and non-arbitrable issues. S.C.Code Ann. 15–48–20(d) (2005); A.R.S. 12–1502(D) (West 2003). These identical sections provide:

> Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto

only. When the application is made in such action or proceeding, the order for arbitration shall include such stay. *Id.*

As the Arizona court noted, there is no language in this section authorizing a trial court to refuse to enforce an arbitration agreement. *See Hallmark,* 52 P.3d at 815. Instead, the trial court must stay the entire action or if the issues are severable, order the non-arbitrable issues to proceed with only the arbitrable issues being stayed.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hawkins v. Bruno Yacht Sales, Inc.,* 353 S.C. 31, 39, 577 S.E.2d 202, 207 (2003). The words of a statute "must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand its operation." *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992). Looking to the language of the Arbitration Act, we find no indication the legislature intended for the courts to be able to ignore an otherwise valid arbitration provision for the sake of judicial economy. The Arbitration Act clearly provides the trial court must enforce an arbitration provision unless grounds "exist at law or in equity for the revocation of any contract." Thus, we find the intertwining doctrine is inconsistent with the intention of our legislature and decline to adopt it.

 Furthermore, we find the intertwining doctrine is in conflict with South Carolina's judicial policy of favoring arbitration. *See Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001) (stating South Carolina's policy is to favor the arbitration of disputes). We recognize that having litigation and arbitration of intertwined issues may be inefficient and lead to inconsistent results. However as the Arizona Court of Appeals recognized: "Any inefficiency or risk of inconsistent results is a consequence of the parties' bargaining." *Hallmark,* 52 P.3d at 815. The court must enforce an unambiguous contract according to its terms, regardless of the wisdom or folly or the parties failure to guard their rights carefully. *Ellis v. Taylor,* 316 S.C. 245, 248, 449 S.E.2d 487, 488 (1994). Furthermore, "[i]f arbitration defenses could be foreclosed simply by adding as a defendant a

person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised." *Paine, Webber, Jackson, & Curtis, Inc. v. McNeal*, 143 Ga.App. 579, 239 S.E.2d 401, 404 (1977) (quoting *Hilti, Inc. v. Oldach*, 392 F.2d 368, 369 n. 2 (1st Cir.1968)).

■ We conclude a trial court may not refuse to enforce an otherwise valid arbitration provision on the basis of judicial economy. Accordingly, we hold the trial court erred in denying Raytheon/Washington's motion to avoid "unnecessarily duplicate proceedings."

## II. Novation

■ Raytheon/Washington also argues the trial court erred in denying its motion to compel arbitration because the settlement agreement acted as a novation of the Consortium agreement, and therefore, the provision in the settlement agreement assigning Raytheon as leader superseded the *ipso facto* provision contained in the Consortium agreement. Thus, Raytheon/Washington asserts it controlled the Consortium and had the authority to decide whether to enforce the arbitration provision in the Consortium's agreement with Wellman.[2]

We first question whether this issue is preserved for our review. Although Raytheon/Washington argued to the trial court that under the revised agreement, Raytheon/Washington was granted leadership in the Consortium and thus had authority to demand arbitration on behalf of the Consortium, it did not specifically argue that the Settlement Agreement constituted a novation of the Consortium agreement. Furthermore, the trial court did not address the effect of the settlement agreement on the leadership of the Consortium, and Raytheon/Washington failed to request a ruling on the

---

2. Raytheon/Washington argues the issue of control of the consortium should be sent to arbitration. In its order, the trial court determined the control issue against Raytheon/Washington. It did not specifically address whether this issue should be sent to arbitration. As Raytheon/Washington did not file a Rule 59, SCRCP, motion asking for the court to address this issue, it is not preserved. *See Noisette v. Ismail*, 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (where a trial court does not explicitly rule on an argument raised and appellant makes no Rule 59 motion to obtain a ruling, the appellate court may not address the issue).

issue in a Rule 59, SCRCP, motion. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *Summer v. Carpenter,* 328 S.C. 36, 43, 492 S.E.2d 55, 58 (1997) (where trial judge did not rule on issue at trial and party did not make a Rule 59, SCRCP, motion for a ruling, issue is not preserved for appellate review).

However, even on the merits, we find no error. "A novation is an agreement between all parties concerned for the substitution of a new obligation between the parties with the intent to extinguish the old obligation. The burden of proving novation is on the party asserting it." *Wayne Dalton Corp. v. Acme Doors, Inc.,* 302 S.C. 93, 96, 394 S.E.2d 5, 7 (Ct.App. 1990) (citation omitted). "The circumstances attending the transaction alleged to be a novation must show the intention to substitute a new obligation in place of the existing one." *Superior Auto. Ins. Co. v. Maners,* 261 S.C. 257, 262, 199 S.E.2d 719, 722 (1973).

Based on the language of the settlement agreement and a letter written to Wellman from the members of the Consortium, we find the parties did not intend for the settlement agreement to act as a novation of the Consortium agreement. First, in our review of the settlement agreement, we find its purpose was only to deal with closeout issues with Wellman. The agreement provides:

WHEREAS Zimmer and Raytheon desire to resolve amicably their various disputes and controversies relating to the claims raised by Wellman and to the claims between each other resulting from the execution of the Contract and the Consortium Agreement, with, among other things, Zimmer waiving and providing a full release to Raytheon of any and all claims which Zimmer may have against Raytheon and assigning to Raytheon its claims against Wellman in exchange for Raytheon waiving and providing a full release to Zimmer of any and all claims which Raytheon may have against Zimmer, all and to the extent as more fully set forth below.

Also, numerous provisions in the settlement agreement incorporate by reference the terms of the Consortium agreement. One example of this is the arbitration provision, which refers to the Consortium agreement for the procedures a party must follow in seeking to arbitrate a claim. In addition, Zimmer and Raytheon's intent upon entering into the settlement agreement is evidenced by a letter to Wellman from the Consortium notifying Wellman of the settlement agreement. This letter states, in part:

> This letter is to inform Wellman that from now on Raytheon will serve as Leader of the Consortium on the H–12 Project to address financial closeout-related issues. These closeout issues specifically include the defense of liquidated damages and backcharges assessed against the Consortium by Wellman, the recovery of unpaid Contract balances and the pursuit of affirmative claims by Raytheon against Wellman (hereinafter "closeout issues").

Therefore, we find the parties intended to modify, but not nullify, the initial Consortium agreement by executing the settlement agreement.

## III. Enforceability of *ipso facto* provision

Raytheon/Washington further argues that even if the settlement agreement was not a novation, the *ipso facto* provision should not deprive it of its right to compel arbitration. It contends it emerged from bankruptcy prior to the filing of Wellman's action; thus, given the policy favoring arbitration, the trial court should have interpreted the *ipso facto* provision as inapplicable to resolve the matter in favor of arbitration. Second, Raytheon/Washington argues the United States Bankruptcy Code invalidated the *ipso facto* provision contained in the Consortium agreement. The section upon which Raytheon/Washington relies prohibits the termination or modification of an executory contract, in which the debtor is a party, upon the commencement of a bankruptcy proceeding based on the debtor insolvency. 11 U.S.C.A. § 365(e)(1) (West 2004).

■ Raytheon/Washington did not raise to the trial court any argument concerning the inapplicability the *ipso facto* provision or the validity of the provision under the bankruptcy code. Additionally, the trial court's order denying Raytheon/Washington's motions does not specifically rule on these

issues. Therefore, we find these arguments are not preserved for our review. *See Wilder Corp.,* 330 S.C. at 76, 497 S.E.2d at 733 ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *Summer,* 328 S.C. at 43, 492 S.E.2d at 58 (where trial judge did not rule on issue at trial and party did not make a Rule 59, SCRCP, motion for a ruling, issue is not preserved for appellate review).

## IV. Preemption of Right to Arbitrate

Finally, Raytheon/Washington argues that given the public policy favoring arbitration, its right to arbitration should not be impaired by it filing for bankruptcy.

Based on our reading of the trial court's order, we find this argument misplaced. The trial court's order provides in pertinent part:

This Court finds that under the Consortium Agreement, due to the undisputed insolvency of Raytheon, Raytheon does not have the right to demand arbitration in this matter when that action is contrary to the desires of Zimmer. This result follows from Raytheon's insolvency and consequential loss of decision making authority regarding Consortium matters.

Based on the trial court's order, it did not determine Raytheon/Washington's bankruptcy preempted its right to arbitration. Rather, the trial court interpreted the provisions of the Consortium agreement and determined pursuant to that agreement, Raytheon/Washington did not have the right to make decisions for the Consortium, including the decision to enforce the arbitration provision under its agreement with Wellman. Accordingly, we find no merit to this argument.

## CONCLUSION

We find no merit in Raytheon/Washington's argument that the settlement agreement constituted a novation. Furthermore, we find Raytheon/Washington's remaining arguments concerning the applicability and validity of the *ipso facto* provision are not preserved for our review. We also find Raytheon/Washington's argument the trial court's decision

was in error because a party's right to arbitrate cannot be impaired by filing bankruptcy, is without merit. Accordingly, we find no error in the trial court's decision that Zimmer, rather than Raytheon/Washington, has the right to decide whether to arbitrate Wellman's claims against the Consortium. However, we find the trial court did err in holding that all claims must be resolved in one forum out of the interest of judicial economy. Thus, we affirm the trial court's denial of Raytheon/Washington's motion to compel arbitration only as it concerns Wellman's claims against the Zimmer and Raytheon/Washington as members of the Consortium. As to any other claims, the trial court's order is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

GOOLSBY and STILWELL, JJ., concur.