644 S.E.2d 718

Vicki F. **CHASSEREAU**, Respondent,

v.

**GLOBAL–SUN POOLS, INC.** and **Ken Darwin**, Petitioners.

No. 26318.

Supreme Court of South Carolina.

Heard Feb. 13, 2007.

Decided April 23, 2007.

Michael H. Montgomery and Frank S. Potts, both of Montgomery Patterson Potts & Willard, of Columbia, for Petitioners.

John E. Parker and Lee D. Cope, both of Peters Murdaugh Parker Eltzroth & Detrick, of Hampton, for Respondent.

Chief Justice TOAL.

This case involves the interpretation of an arbitration agreement. The trial court denied Petitioners' motion to compel arbitration of several claims Respondent asserted as a result of Petitioners' aggressive debt collection practices, and the court of appeals affirmed the trial court's decision. We granted certiorari, and we now affirm.

FACTUAL/PROCEDURAL BACKGROUND

In April 2003, Respondent Vicki Chassereau ("Chassereau") contracted with Petitioner Global Sun Pools ("Global–Sun") to purchase an above ground pool. Chassereau contends that sometime thereafter, the pool began malfunctioning or was otherwise in need of repair. After Global–Sun allegedly refused to remedy the problems, Chassereau ceased making payments on the pool.

According to Chassereau, Petitioner Ken Darwin ("Darwin"), an employee of Global–Sun, began systematically harassing her as a result of her cessation of payments on the pool. Specifically, Chassereau alleges that Darwin repeatedly phoned her at her workplace; disclosed private information to Chassereau's friends, relatives, and co-workers; and also made false and defamatory statements about Chassereau to these same people. Ultimately, Chassereau sued Darwin and Global–Sun for defamation, intentional infliction of emotional distress, and a violation of S.C.Code Ann. § 16–17–430 (2003) (defining the criminal offense of "unlawful communication").

Global–Sun and Darwin moved to compel arbitration of Chassereau's claims, arguing principally that two documents executed during the course of the sale of the pool required that these claims be arbitrated.[1] The trial court disagreed and denied the motion to compel arbitration. Global–Sun and Darwin appealed.

The court of appeals affirmed the trial court's decision. *Chassereau v. Global–Sun Pools, Inc.,* 363 S.C. 628, 611 S.E.2d 305 (2005). In determining whether Chassereau's claims were required to be arbitrated, the court of appeals examined only the arbitration clause contained in the Installation Agreement. *Id.* at 633 n. 8, 611 S.E.2d at 307 n. 8. The court held that because the trial court's order relied only on the arbitration clause in the Installation Agreement, any argument regarding the arbitration clause contained in the Financing Agreement was not preserved for review. *Id.* Ultimately, the court of appeals agreed with the trial court's conclusion that Chassereau's claims were "based upon tortious conduct of

---

1. The parties refer to these documents as the "Installation Agreement" and the "Retail Installment Agreement." For the sake of convenience, we will refer to the latter document as the "Financing Agreement."

the employees of [Global–Sun Pools] unrelated to the contract," and that the claims did not arise out of or relate to the contract. *Id.* at 635, 611 S.E.2d at 308. Accordingly, the court held that the arbitration clause in the Installation Agreement did not require that Chassereau's claims be arbitrated. *Id.*

Global–Sun and Darwin unsuccessfully petitioned the court of appeals to supplement the record on appeal with the Financing Agreement and to grant rehearing in the matter. This Court granted certiorari to review the court of appeals' decision, and Global–Sun and Darwin present the following issue for review:

Did the court of appeals err in determining that the Installation Agreement's arbitration clause did not apply to Chassereau's claims?

## STANDARD OF REVIEW

Unless the parties provide otherwise, the question of the arbitrability of a claim is an issue for judicial determination. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001). The determination of whether a claim is subject to arbitration is subject to *de novo* review. *Wellman, Inc. v. Square D Co.*, 366 S.C. 61, 67, 620 S.E.2d 86, 89 (Ct.App.2005); *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir.2001). Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings. *Thornton v. Trident Med. Ctr., L.L.C.*, 357 S.C. 91, 94, 592 S.E.2d 50, 51 (Ct.App.2003).

## LAW/ANALYSIS

Global–Sun and Darwin argue that the court of appeals erred in determining that the Installation Agreement's arbitration clause did not apply to Chassereau's claims. We disagree.

Both state and federal policy favor arbitration of disputes. *Zabinski*, 346 S.C. at 596, 553 S.E.2d at 118. Unless a court can say with positive assurance that the arbitration clause is not susceptible to any interpretation that covers the dispute, arbitration should generally be ordered. *Id.* at 597, 553 S.E.2d at 118–119. However, arbitration is a

matter of contract, and a party cannot be required to arbitrate any dispute which he has not agreed to arbitrate. *Id.* at 596, 553 S.E.2d at 118.

The resolution of this case is controlled by our recent pronouncement in *Aiken v. World Finance Corporation of South Carolina,* Op. No. 26313, 644 S.E.2d 705 (S.C. Sup.Ct. filed April 23, 2007). In that case, we refused to interpret an arbitration agreement with similar, though not identical, language to apply to illegal or outrageous acts that no reasonable person would have foreseen at the time the parties executed the agreement to arbitrate. We instructed:

> Because even the most broadly-worded arbitration agreements still have limits founded in general principles of contract law, this Court will refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings.

*Id.*

From the beginning of her relationship with Global–Sun, Chassereau certainly knew that she would be required to make payments on the pool she purchased. Furthermore, Chassereau must have expected that Global–Sun employees would contact her and request that she make payments on the pool if she ceased doing so. However, we believe a reasonable person would not have foreseen and would not have expected (and ought not to expect) Global–Sun employees to commit acts historically associated with the common law tort of outrage in seeking to collect an overdue debt. Our opinion in *Aiken* unequivocally provides that although these types of uncivilized acts often arise in the course of performance of contracts containing arbitration clauses, South Carolina courts will not interpret arbitration clauses to apply to such acts which are outrageous and unforeseen.

Although we are constrained to resolve all doubts in favor of arbitration, this is not an absolute truism intended to replace careful judicial analysis. While actions taken in an arrangement such as the one entered into by these parties might have the potential to generate several legal claims and causes of action, we have no doubt that Chassereau did not intend to agree to arbitrate the claims she asserts in the instant case.

Accordingly, we hold that these claims are not covered by the arbitration agreement at issue in the instant case.[2]

### CONCLUSION

For the foregoing reasons, we affirm the court of appeals' decision.

MOORE, WALLER and BURNETT, JJ., concur.
PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES:

I respectfully dissent. The majority does not explicitly find that the claims alleged by Mrs. Chassereau do not arise in any matter relating to her agreements with Global–Sun, yet nonetheless holds that the arbitration clause contained in the Installation Agreement does not require Mrs. Chassereau's claims to be arbitrated.

We must decide whether Mrs. Chassereau's claims arise in any manner or are related to her agreement with Global–Sun.[3] Because I would hold that these claims qualify on both counts, I would reverse the decision of the court of appeals.

In examining whether an arbitration agreement extends to a particular tort claim, South Carolina courts must focus on the factual allegations supporting the claim to determine whether the allegations implicate the contractual agreement, regardless of the legal label assigned to the claim. *See Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir.1996); *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 597, 553 S.E.2d 110, 118 (2001). We have held

---

**2.** On appeal, Global–Sun and Darwin also contend that the court of appeals erred in holding that any argument regarding the arbitration clause contained in the Financing Agreement was not preserved for review. In light of the foregoing analysis, however, it is unnecessary for us to address this contention. *See Futch v. McAllister Towing of Georgetown*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing that an appellate court need not address additional issues if the resolution of another issue is dispositive).

**3.** This limitation of our inquiry is based on the fact that the arbitration agreement at issue provides that "any disputes *arising in any manner relating to this agreement* ... shall be subject to mandatory, exclusive and binding arbitration." (emphasis added).

that a tort claim that does not arise under the governing contract is nevertheless required to be arbitrated if there is a "significant relationship" between the tort claim and the contract in which the arbitration clause is contained. *Zabinski,* 346 S.C. at 598, 553 S.E.2d at 119. Nothing relates more significantly to a contract than efforts to collect amounts due thereunder.

Case law from other jurisdictions supports this conclusion. In *Green Tree Fin. Corp. v. Shoemaker,* 775 So.2d 149 (Ala. 2000), the purchasers of a mobile home sued the company which financed the purchase. The purchasers claimed that after they became delinquent in their payments, the finance company began a systematic course of harassing them and invading their privacy. *Id.* at 150. Although the arbitration clause in *Shoemaker* was broader than the clause at issue in the instant case, the Alabama Supreme Court held:

> The plain language of this provision requires the plaintiffs to submit to arbitration all controversies that arise from, or relate to, the contract. That language clearly encompasses the plaintiffs' claim alleging invasion of privacy, a claim that arose out of the underlying business transaction of collecting delinquent monthly payments.

*Id.* at 151.[4]

The case of *In re Conseco Fin. Servicing Corp.,* 19 S.W.3d 562 (Tex.Ct.App.2000), also arose out of a financed purchase of a mobile home. Interpreting whether an arbitration clause identical to the clause at issue in *Shoemaker* applied to virtually identical claims, the court held:

> [The complaint] arises from Conseco's alleged efforts to collect the amounts due under the terms of the agreement. Absent the contract, there would be no relationship between [the parties], and there would have been no debt collection. . . . Therefore, we conclude that [the plaintiff's] claims based on Conseco's acts in collecting the debt owed on the

---

4. The arbitration clause in *Shoemaker* purported to apply not only to all claims arising out of or relating to the agreement, but also to all claims *between the parties. Id.* at 150. This distinction is insignificant, however, because the court in *Shoemaker* rests its holding only on the relationships of the claims to the agreement. *See id.* at 151. Thus, Mrs. Chassereau's attempt to distinguish *Shoemaker* on this ground is unpersuasive.

contract arise from or relate to the contract and so are within the scope of the arbitration clause.

*Id.* at 570.

I believe the reasoning of both *Shoemaker* and *Conseco* applies with equal force in the instant case. In my view, it is difficult to imagine something more related to a debt agreement than actions taken to collect the debt. Under any conceivable definition of the word "significant," actions taken in seeking to collect a debt *must* be significantly related to the debt.

The rule the majority announces is troubling in several regards. Primarily, the rule is inconsistent with the notion that all doubts regarding the question of arbitration are to be construed in favor of arbitration. *See Zabinski,* 346 S.C. at 597, 553 S.E.2d at 118. Similarly, the rule runs afoul of the oft repeated notion that unless a court can say with positive assurance that the arbitration clause is not susceptible to any interpretation that covers the dispute, arbitration should generally be ordered. *See id.* Admittedly, these arbitration principles run counter to general notions of contract interpretation; namely, that a court will construe any doubts and ambiguities in an agreement against the drafter of the agreement. *See Myrtle Beach Lumber Co., Inc. v. Willoughby,* 276 S.C. 3, 8, 274 S.E.2d 423, 426 (1981) (citing 17A C.J.S. *Contracts* § 324). In contrast to the majority's rule, however, the principle that doubts are construed in favor of arbitration is rooted in a statutory proscription. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (stating that § 2 of the Federal Arbitration Act, 9 U.S.C. § 1, et seq., is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary).

Mrs. Chassereau's claims unquestionably arise out of and are significantly related to the Installation Agreement. Accordingly, I would reverse the decision of the Court of Appeals.