ACTING JUSTICE TOAL:
I respectfully dissent. I disagree that the outrageous and unforeseeable tort exception is not a general contract principle. Accordingly, I believe the majority errs in overruling previous South Carolina cases that apply the exception. Moreover, the majority’s opinion undermines the protections the Court has previously extended to homebuyers in Kennedy v. Columbia Lumber & Manufacturing Co.[11] and its progeny. See, e.g., Smith v. Breedlove, 377 S.C. 415, 422-24, 661 S.E.2d 67, 71-72 (2008). Therefore, I dissent.

I. General Contract Principles

In “overruling] the judiciary’s long-standing refusal to enforce agreements to arbitrate,” the United States Supreme Court has held numerous times that arbitration agreements must be placed “upon the same footing as [all] other contracts.” Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (citations omitted) (internal quotation marks omitted). Accordingly, the Federal Arbitration Act (FAA)[12] “imposes certain rules of fundamental importance, including the basic [contract] precept that arbitration ‘is a matter of consent, not coercion.’ ” Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 559 U.S. 662, 681, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (quoting Volt, 489 U.S. at 479, 109 S.Ct. 1248); see also Volt, 489 U.S. at 478, 109 S.Ct. 1248 (“[T]he FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding *17 certain claims from the scope of their arbitration agreement.” (internal citations omitted)).[13] Similarly, as with all other contracts, when a court interprets an arbitration agreement, “ ‘the parties’ intentions control’ ” such that the court’s interpretation merely “ ‘give[s] effect to the contractual rights and expectations of the parties.’ ” Stolt-Nielsen, 559 U.S. at 681-82, 130 S.Ct. 1758 (quoting Volt, 489 U.S. at 479, 109 S.Ct. 1248; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).
As I read our precedents, the so-called “outrageous and unforeseeable tort exception to arbitration” is merely a label for this Court’s application of a longstanding contract principle—effectuating the parties’ contractual expectations. In the past, when the Court invoked the exception, it merely recognized that upon executing the arbitration agreement, the parties did not intend to arbitrate claims arising out of the other party’s extreme and unforeseeable conduct. Aiken v. World Fin. Corp. of S.C., 373 S.C. 144, 151, 644 S.E.2d 705, 709 (2007) (“Because even the most broadly-worded arbitration agreements still have limits founded in general principles of contract law, this Court will refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings.”); see also Landers v. Fed. Deposit Ins. Corp., 402 S.C. 100, 115, 739 S.E.2d 209, 217 (2013) (“[Ejven the broadest of [arbitration] clauses have their limitations.”); Partain v. Upstate Auto. Grp., 386 S.C. 488, 492, 689 S.E.2d 602, 604 (2010). In other words, absent evidence to the contrary, parties do not intend to arbitrate wholly unexpected, outrageous behavior. Timmons v. Starkey, 389 S.C. 375, 379, 698 S.E.2d 809, 811 (2010) (Toal, C.J., dissenting) (“An arbitration clause does not cover every potential suit between the signing parties; instead, it only applies to those claims foresee-ably arising from the contractual relationship.”).[14] Forcing the *18 parties to arbitrate claims based on such behavior would be contrary to their intent in entering the arbitration agreement, and would impose the court’s will upon the parties.
Accordingly, I disagree with the majority’s assertions that the outrageous and unforeseeable tort exception to arbitration is not a general contract principle. In my view, the exception treats arbitration agreements and contracts precisely equally. Specifically, the exception ensures that a court will consider the parties’ intentions when it determines the scope of the agreement at issue, be it contract or arbitration agreement. See Chassereau v. Global Sun Pools, Inc., 373 S.C. 168, 172, 644 S.E.2d 718, 720 (2007) (“Although we are constrained to resolve all doubts in favor of arbitration, this is not an absolute truism intended to replace careful judicial analysis. While actions taken in an arrangement such as the one entered into by these parties might have the potential to generate several legal claims and causes of action, we have no doubt that [the plaintiff] did not intend to agree to arbitrate the claims she asserts in the instant case [because those claims are based on the defendant’s allegedly outrageous and unforeseeable behavior].”); cf. Volt, 489 U.S. at 478, 109 S.Ct. 1248 (“[T]he PAA does not require parties to arbitrate when they have not agreed to do so .... ” (citations omitted)).
In fact, many courts have recognized that outrageous and unforeseeable conduct is generally not arbitrable. See, e.g., Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204 (11th Cir. 2011) (holding that claims of false imprisonment, intentional infliction of emotional distress, spoliation of evidence, invasion of privacy, and fraudulent misrepresentation were outside the scope of an arbitration clause in an employment agreement between the cruise line and a crewmember who claimed she was drugged and raped by fellow crewmembers); cf. Landers v. Fed. Deposit Ins. Corp., 402 S.C. 100, 108, 739 S.E.2d 209, *19 213 (2013) (“Whether a party has agreed to arbitrate an issue is a matter of contract interpretation and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.” (emphasis added) (quoting Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960))) (internal marks omitted)). The majority suggests that considering the scope of the arbitration agreement is a new concept “created in 2007,” and that South Carolina disproportionately invalidates arbitration agreements based on conduct falling outside the scope of the contract. I strongly disagree with this contention. Cf. Stolt-Nielsen, 559 U.S. at 684, 130 S.Ct. 1758 (rejecting the view that once an entitlement to arbitration is established, any claim may be arbitrated). Merely because this Court attributed a formal label to the concept of considering the scope of an arbitration agreement is no reason to invalidate the rationale underlying the label.
It appears that the majority approves of considering the parties’ intentions in determining the scope of the agreement, but takes issue with the exception because of its label—the outrageous and unforeseeable tort exception to arbitration. However, this label is a misnomer. The analysis underlying the exception—defining the scope of the agreement by effectuating the parties’ contractual expectations—is equally applicable to contracts and arbitration agreements.
Accordingly, I disagree that the Court should abolish this analytical process in future cases. Abolishing the outrageous and unforeseeable tort exception effectively places arbitration agreements in a position of vast superiority to all other contracts. In essence, arbitration agreements now become “super contracts,” in which the parties’ intentions in outlining the scope of their agreement are irrelevant, and courts must now indiscriminately send parties to arbitration regardless of their intentions. As stated previously, this blind imposition of judicial might on the parties not only lacks a legal foundation, but takes the Supreme Court’s directives to enforce arbitration agreements to irrational lengths. See Stolt-Nielsen, 559 U.S. at 684, 130 S.Ct. 1758 (“It falls to courts and arbitrators to give effect to the[ ] contractual limitations, and when doing *20 so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties.” (emphasis added)).[15]

II. Application

South Carolina courts have applied the outrageous and unforeseeable tort exception sparingly and are reluctant to declare the tortious conduct underlying a lawsuit to be unrelated to the contract containing the arbitration agreement.[16] In *21 determining whether the exception applies, a court should focus on the parties’ intent, the foreseeability of a particular claim when the parties entered into the agreement, and whether or not the specific claims fall within the scope of the arbitration agreement, either expressly or because they significantly relate to the contract. See Chassereau, 373 S.C. at 172-73, 644 S.E.2d at 720-21.
Here, the gravamen of the complaint is that JWH failed to disclose certain defects with the property, including industrial pipes and a concrete box containing a hazardous substance. As explained further, infra, it is unreasonable and unforeseeable that JWH would fail to clean up such extreme pollution on a residential construction site. Cf. Kennedy, 299 S.C. at 344, 384 S.E.2d at 736 (‘We have made it clear that it would be intolerable to allow builders to place defective and inferior construction into the stream of commerce.” (citing Rogers v. Scyphers, 251 S.C. 128, 135-36, 161 S.E.2d 81, 84 (1968))). Therefore, it is inconceivable that the parties contemplated claims involving hazardous pollution on the construction site when executing their arbitration agreement. Accordingly, I would not compel arbitration of these particular claims, as doing so would not fulfill the parties’ expectations in entering the arbitration agreement.

III. Residential Construction Arbitration Agreements

Although the primary issue in this appeal involves the enforceability of an arbitration agreement, the entire lawsuit *22 arose due to extreme defects concealed during JWH’s construction of a home. Because the case involves residential construction, the protections this Court has previously extended to homebuyers in Kennedy and the like impose an extra “gloss” on the relevant analysis, one which the majority overlooks.
South Carolina courts have historically been inclined to expand general contract and tort principles to protect innocent homebuyers. See, e.g., Kennedy, 299 S.C. at 343-44, 384 S.E.2d at 735-36; Lane v. Trenholm Bldg. Co., 267 S.C. 497, 501-03, 229 S.E.2d 728, 730-31 (1976) (“Disparity in the law should be founded upon just reason and not the result of adherence to stale principles which do not comport with current social conditions.”); Rogers v. Scyphers, 251 S.C. 128, 132-34, 135-36, 161 S.E.2d 81, 83, 84-85 (1968). To that end, South Carolina courts embraced the maxim caveat venditor, or “seller beware,” and abolished the requirement of strict privity between a home purchaser and a homebuilder. McCullough v. Goodrich & Pennington Mortg. Fund, Inc., 373 S.C. 43, 53, 644 S.E.2d 43, 49 (2007); Kennedy, 299 S.C. at 343, 344-45, 384 S.E.2d at 735, 736; see also Sapp v. Ford Motor Co., 386 S.C. 143, 147-48, 687 S.E.2d 47, 49-50 (2009) (discussing Kennedy and noting that its holding “followed cases from around the country expanding protections afforded to homebuyers and imposing tort liability on residential homebuilders”). Thus, in cases involving residential construction contracts, general contract and tort principles occasionally give way to the State’s dual policies of protecting the homebuyer and making it easier for that buyer to pursue claims against the builder or seller.
Because Kennedy and its progeny explicitly apply only to residential construction contracts, this Court has not previously had occasion to address how this line of cases applies to residential construction arbitration agreements. However, again, the Supreme Court has held numerous times that arbitration agreements must be placed “upon the same footing as [all] other contracts.” Volt, 489 U.S. at 478, 109 S.Ct. 1248 (citations omitted) (internal quotation marks omitted). Thus, I conclude that South Carolina’s longstanding policy of protecting innocent homebuyers extends to arbitration agreements involving residential construction as well. See Perry v. Thomas, 482 U.S. 483, 492-93 n.9, 107 S.Ct. 2520, 96 L.Ed.2d 426 *23 (1987) (“Thus state law, whether of legislative or judicial origin, is applicable [to arbitration agreements] if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.... A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law.” (bold emphasis added)).[17] Accordingly, as in all other residential construction cases, I would extend this Court’s protection to the Parsons, as the innocent homebuyers.[18]
In the arbitration context, I believe this protective “gloss” specifically applies to whether the homebuilder’s conduct is outrageous, unforeseeable, and not contemplated by the parties when entering into the residential construction contract. Thus, as applied here, Kennedy and its progeny lead me to find that JWH’s failure to disclose the extreme pollution and defects with the property was not only unreasonable, but unforeseeable as well. As stated, supra, I would therefore refuse to compel arbitration between the parties, as claims based on such outrageous conduct by a homebuilder surely were not contemplated by the parties.

IV. Conclusion

I believe the outrageous and unforeseeable tort exception to arbitration is merely a label for a general contract principle: effectuating the contractual expectations of the parties. Therefore, I would adhere to the Court’s previous holdings that the exception may invalidate an arbitration agreement if certain criteria are met. Further, I would extend the protections of Kennedy and its progeny to arbitration agreements involving residential construction. Accordingly, I dissent.

. 299 S.C. 335, 384 S.E.2d 730 (1989).

. 9 U.S.C. §§ 1-16 (2006).

. However, given the strong federal and state policies favoring arbitration, a court should generally compel arbitration "[u]nless [it] can say with positive assurance that the arbitration clause is not susceptible to any interpretation that covers the dispute.” Partain v. Upstate Auto. Grp., 386 S.C. 488, 491, 689 S.E.2d 602, 603-04 (2010).

. Cf. Landers, 402 S.C. at 115, 739 S.E.2d at 217 (finding claims arbitrable in part because the plaintiff provided a "clear nexus” be *18 tween the contract, its arbitration clause, and the causes of action, such that they were all significantly related); Mibbs, Inc. v. S.C. Dep't of Rev., 337 S.C. 601, 608, 524 S.E.2d 626, 629 (1999) (finding that contractual duties may be affected by foreseeable actions taken in the future); S.C. Fed. Sav. Bank v. Thornton-Crosby Dev. Co., 303 S.C. 74, 78-79, 399 S.E.2d 8, 11-12 (Ct. App. 1990) (acknowledging that a party could defend itself from a breach of contract suit in part if a consequence of the breach was unforeseeable).

. In an effort to shore up its analysis, the majority cites to the recent Supreme Court holding in DIRECTV, Inc. v. Imburgia, — U.S.-, 136 S.Ct. 463, 193 L.Ed.2d 365 (2015). However, despite its use of selective quotes from the opinion, the majority fails to accurately relay the facts and holding of that case. As the Imburgia opinion sets forth in detail, in 2005, the California Supreme Court held that a waiver of class arbitration in a consumer contract of adhesion is unconscionable trader California law, and thus unenforceable. Id. at 466 (quoting Discover Bank v. Superior Court, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005)). However, in AT&T Mobility L.L.C. v. Concepcion, the Supreme Court specifically invalidated California’s so-called Discover Bank rule, holding that it was preempted by the FAA because it stood " 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' ” Id. (quoting AT&T Mobility L.L.C. v. Concepcion, 563 U.S. 333, 352, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011)). Nonetheless, in Imburgia, the California Court of Appeal held that California law " 'would find the class action waiver unenforceable,’ ” citing to the Discover Bank rule. Id. at 467, 30 Cal.Rptr.3d 76, 113 P.3d (quoting Imburgia v. DIRECTV, Inc., 225 Cal.App.4th 338, 170 Cal.Rptr.3d 190, 194 (2014)).
On appeal, the Supreme Court invalidated the decision of the California Court of Appeal, stating, among various other rationale:
Fifth, the Court of Appeal reasoned that invalid state arbitration law, namely the Discover Bank rule, maintained legal force despite this Court’s holding in Concepcion. The court stated that "[i]f we apply state law alone to the class action waiver, then the waiver is unenforceable.” And at the end of its opinion, it reiterated that "[t]he class action waiver is unenforceable under California law, so the entire arbitration agreement is unconscionable.” But those statements do not describe California law. The view that state law retains independent force even after it has been authoritatively invalidated by this Court is one courts are unlikely to accept as a general matter and to apply in other contexts.
Imburgia, 136 S.Ct. at 470 (emphasis added) (internal citations and alteration marks omitted). Thus, Imburgia stands merely for the unsurprising proposition that the Supremacy Clause forbids state courts from ignoring the specific holdings of the Supreme Court.

. In fact, this Court has cautioned that the exception should not be used as an “end-run” around arbitration clauses. See Partain, 386 S.C. *21 at 494, 689 S.E.2d at 605. Only when the parties truly and clearly did not contemplate arbitrating a particular claim should a court decline to enforce an otherwise proper arbitration agreement on the grounds that the claim is not significantly related to the contract. Id. at 494-95, 689 S.E.2d at 605; compare Landers, 402 S.C. at 100, 739 S.E.2d at 209 (finding the slander and intentional infliction of emotional distress claims brought by a man who was fired significantly related to his employment contract that specified grounds and remedies for rightful and wrongful termination because the offensive comments related to the man’s puiported inability to do his job), with Partain, 386 S.C. at 488, 689 S.E.2d at 602 (finding that a claim involving a "bait and switch” in relation to a used car purchase was outrageous and unforeseeable and thus was not subject to arbitration), and Chassereau, 373 S.C. at 168, 644 S.E.2d at 718 (finding a claim for extensive public harassment of a customer was not significantly related to the contract to pay for a pool, and thus was not subject to arbitration).

. Were I to conclude that Kennedy's protections did not extend to homebuyers whose contracts involved an arbitration agreement, I would place those arbitration agreements in a position of vast superiority over contracts, rather than treating them equal to contracts,

. In failing to extend Kennedy's protection to the Parsons here, the majority opinion undermines our extensive precedent in the residential construction context.