788 So.2d 155 (2000)
FOUNTAIN FINANCE, INC.
v.
Lavonne Pearson HINES et al.
Jim Skinner Ford, Inc.
v.
Lavonne Pearson Hines et al.
1991208 and 1991209.
Supreme Court of Alabama.
December 15, 2000.
John Martin Galese, Jeffrey L. Ingram, and David A. Norris of Galese & Ingram, P.C., Birmingham, for appellants.
*156 David E. Hampe, Jr., Birmingham, for appellee Lavonne Pearson Hines.
COOK, Justice.
Fountain Finance, Inc. ("Fountain"), and Jim Skinner Ford, Inc. ("Jim Skinner"), are defendants in an action pending in the Jefferson Circuit Court. They appeal from an order denying their motion to compel arbitration of the claims presented by the plaintiffs, Lavonne Hines and others. We affirm.
This action began on August 6, 1999, when a complaint was filed by "Lavonne Pearson Hines, individually, ... and as Mother and next friend of Undra Pearson, a minor, and Marshall Pearson, a minor,... in their behalf; [and] Willie B. Hines, an individual." The complaint named as defendants Fountain, Jim Skinner, and "Ron Davis, an individual." The complaint read in toto:
"I.
"On or about July 7, 1999, in the early morning hours, the Defendants, individually, and/or by and through their agents or servant[s], committed an assault and battery on the Plaintiffs, Undra Pearson, a minor, Marshall Pearson, a minor, and Lavonne Pearson Hines, at their residence at 3525 Wynwood Road, Birmingham, Alabama, 35210.
"II.
"On or about July 7, 1999, in the early morning hours, the Defendants, individually, and/or by and through their agents or servant[s], negligently or wantonly committed a trespass to the property of Willie B. Hines, and as proximate consequence of the trespass, caused damage to the interior garage and garage door of [their] residence at 3525 Wynwood Road, Birmingham, Alabama 35210.
"III.
"On or about July 7, 1999, in the early morning hours, the Defendants, individually, and/or by and through their agents or servant[s], committed a criminal act against the Plaintiffs, in violation of the Criminal Statute[s] of the State of Alabama, including but not limited to, an assault and battery on the Plaintiffs, and also committed wrongful entry into the premises of the Plaintiffs.
"IV.
"On or about July 7, 1999, in the early morning hours, the Defendants, individually, and/or by and through their agents or servant[s], committed a tort of outrage against the aforementioned Plaintiffs, on said occasion as aforementioned.
"V.
"On or about July 7, 1999, in the early morning hours, the Defendants, individually, and/or by and through their agents or servant[s], negligently or wantonly injured the Plaintiffs in the incident complained of above.
"As a proximate consequence of the actions of the Defendants against the Plaintiffs in Counts I. through IV., the Plaintiffs suffered the following injuries and damage:
"1. Lavonne Pearson Hines suffered a bruised chest, scratched knee, and was caused to hyperventilate; she was placed in fear [for] her person; she was caused to suffer extreme pain and mental anguish; she was caused to incur medical bills for treatment of her injuries, and the injuries to her children.

*157 "2. The Plaintiff, Marshall Pearson, a minor, was caused to suffer a fractured hand; he was caused to be incapacitated; he was caused to suffer extreme pain and mental anguish; and fear [for] his person; he was caused to have to seek medical treatment for his injury.
"3. The Plaintiff, Undra Pearson, a minor, was caused to be slapped and knocked into a wall with such force it damaged ... the panelling of the garage; he was caused to be placed in fear [for] his person, and he [was] caused to suffer extreme pain and mental anguish.
"4. The Plaintiff, Willie B. Hines, suffered property damage to his home and was further caused to suffer mental anguish for the injuries to his wife and stepchildren.
"WHEREFORE, Plaintiffs, individually, claim damage against the Defendants, both named and fictitiously listed, both separately and severally, in an amount to be decided by a struck jury. Plaintiffs claim compensatory and punitive damages."
The complaint is unverified; it is signed only by the plaintiffs' counsel.
Fountain and Jim Skinner each moved to compel arbitration of the plaintiffs' claims. In materially identical language, their motions stated:
"This motion is based upon the written agreement to arbitrate signed by Lavonne Pearson Hines, (attached hereto), entered into on March 2, 1998, the affidavit of John Brown and the controlling, applicable law.
"In support hereof, the Defendant shows as follows:
". . . .
"... The instant matter involves claims of wrongful conduct during a repossession of the automobile purchased by the Plaintiff under a retail installment contract signed at the time of signing the arbitration agreement. The contract was assigned, without recourse, by Jim Skinner Ford, Inc. to Fountain Finance, Inc. prior to the conduct sued upon....
"The automobile at issue was manufactured out of state by Chrysler Corporation and delivered into Alabama, [and] subsequently sold by Jim Skinner Ford, Inc. to said Plaintiff....
". . . .
"10. As plainly demonstrated by its language, the arbitration agreement is sufficiently broad in scope to require arbitration of all claims arising out of or resulting from the purchase transaction. Repossession of the vehicle as a result of a claimed default under the installment purchase agreement, certainly arises out of and/or results from the financed purchase.
". . . .
"WHEREFORE, PREMISES CONSIDERED, Defendant moves this court to enter an order staying the action as to all plaintiffs and compelling plaintiff, Lavonne Pearson Hines to arbitrate her claims against the defendant[s], in accordance with her contract with [these] Defendant[s].
 "Respectfully submitted,
 "[Attorney's signature]"
The motions are unverified.
In connection with these motions, Fountain and Jim Skinner submitted the affidavit of John Brown, which read in toto:
"My name is John Brown. I have personal knowledge of the matters set forth herein. I am over 19 and competent to make this affidavit. At all times material hereto I have been the comptroller of and one of the custodians of *158 the books and records of Jim Skinner Ford, Inc.
"On March 2, 1998, Lavonne Pearson, who I understand is also known as Lavonne Pearson Hines, purchased a 1990 Dodge Caravan vehicle from Jim Skinner Ford, Inc. The purchase was financed. Ms. Pearson signed a written agreement which contained a binding arbitration agreement and she signed a retail installment contract, among other documents, as part of the purchase transaction. No part of these agreements was suppressed from or concealed from her at the time of her signing. A copy of the agreement containing the arbitration clause is attached to Jim Skinner Ford, Inc.'s motion to compel arbitration in this case. This document is maintained by me under my supervision and control, as a business record of the dealership and as part of my duties as a records custodian. The right to repossess the vehicle upon a default was contained within the retail installment contract.
"Jim Skinner Ford, Inc., on December 21, 1998, sold and assigned the retail installment contract signed by Ms. Pearson, to Fountain Finance, Inc. Jim Skinner Ford, Inc. had no financial or other interest in the unpaid balance due by Ms. Pearson or under the retail installment contract thereafter.
"The vehicle purchased by Ms. Pearson was manufactured out of state and delivered into Alabama through the use of interstate commerce. The sale and finance of Ms. Pearson's vehicle was regulated under various federal laws, including, the Truth in Lending Act, the Federal Odometer Act, and FTC Holder in Due Course Rule and FTC rules dealing with the sale of used cars.
"Further your affiant saith not."
On December 20, 1999, the trial court granted the motions to compel arbitration. However, on February 29, 2000, it vacated its order granting the motions and entered an order denying them. From that order, Fountain and Jim Skinner appealed.
Fountain and Jim Skinner contend that the trial court erred in denying their motions to compel arbitration, because, they argue, Lavonne Hines signed an arbitration agreement and the plaintiffs' claims "fall within the scope of the arbitration agreement." We agree that Lavonne Hines signed an arbitration agreement, but we disagree with the argument that the plaintiffs' claims are subject to it.
Not every tort claim involving parties to an arbitration agreement is arbitrable. An arbitration clause cannot be "enforced to require arbitration of a claim alleging an intentional tort that is in no way related to the underlying transaction that gave rise to the arbitration agreement." Green Tree Fin. Corp. v. Shoemaker, 775 So.2d 149, 151 n. 3 (Ala.2000). "To hold otherwise would allow persons signing broad arbitration provisions to commit intentional torts against one another, which torts are outside the scope of their contemplated dealings, without concern that they might have to answer for their actions before a jury of their peers." Ex parte Discount Foods, 711 So.2d 992, 994 (Ala.), cert. denied sub nom. Supervalu Inc. v. Discount Foods, Inc., 525 U.S. 825, 119 S.Ct. 71, 142 L.Ed.2d 56 (1998).
The complaint alleges various intentional torts, all arising out of an apparently serious altercation on the Hines property "in the early morning hours" of July 7, 1999. The complaint does not allege that this altercation had anything to do with the contract containing the arbitration provision on which Fountain and Jim Skinner rely. Indeed, the 93-page record filed in *159 this appeal contains no evidence relating to the incident on July 7, 1999.
"A motion to compel arbitration is analogous to a motion for a summary judgment. The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce." Ex parte Caver, 742 So.2d 168, 172 n. 4 (Ala.1999) (emphasis added). "`In order to prevail on an assertion of arbitrability, the moving party is required to produce some evidence which tends to establish its claim.'" Ryan's Family Steak Houses, Inc. v. Regelin, 735 So.2d 454, 457 (Ala.1999) (emphasis added) (quoting Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 (Ala.1995)).
Fountain and Jim Skinner failed to produce any evidence indicating that claims arising out of the incident made the basis of the plaintiffs' lawsuit were arbitrable. To be sure, their motions state: "The instant matter involves claims of wrongful conduct during a repossession of the automobile purchased by the Plaintiff under a retail installment contract signed at the time of signing the arbitration agreement." (Emphasis added.)
However, "[m]otions and arguments of counsel are not evidence." Williams v. Akzo Nobel Chemicals, Inc., 999 S.W.2d 836, 845 (Tex.App.1999). "[S]tatements in motions are not evidence and are therefore not entitled to evidentiary weight." Singh v. Immigration & Naturalization Serv., 213 F.3d 1050, 1054 n. 8 (9th Cir.2000). "[B]riefs submitted in support of motions are not evidence to be considered by the Court in resolving a summary judgment motion." Direct Media Corp. v. Camden Tel. & Tel. Co., 989 F.Supp. 1211, 1217 (S.D.Ga.1997). Indeed, the only evidence presented in the record is the affidavit of John Brown. However, his affidavit appears to have been offered only to establish the necessary nexus of the sales transaction with interstate commerce. It conspicuously fails to address the factual basis out of which the plaintiffs' claims arise.
Because of the sparseness of the record, we can only surmise that the altercation made the basis of the complaint had something to do with an attempted repossession of a motor vehicle. For example, no evidence in the record indicates that the defendants' alleged presence on the Hines property related in any way to the 1990 Dodge Caravan purchased on March 2, 1998. This is significant, because, if it did not, then the arbitration clause Hines signed in connection with that transaction was immaterial for any conceivable purpose. The record contains no stipulations relating to the plaintiffs' cause of action.
Because Fountain and Jim Skinner failed to connect the March 2, 1998, purchase of the 1990 Dodge Caravan to the incident made the basis of the plaintiffs' claims, they failed to satisfy their burden of proof on the question whether the arbitration agreement covered the plaintiffs' claims. Thus, the trial court properly denied the motions to compel arbitration. The order of the trial court is, therefore, affirmed.
AFFIRMED.
MADDOX, HOUSTON, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
SEE, J., concurs in the result in part and dissents in part.
HOOPER, C.J., dissents.
SEE, Justice (concurring in the result in part and dissenting in part).
I concur in the result of the main opinion to the extent it holds that the intentional-tort *160 claims alleged by Lavonne Pearson Hines's husband, Willie B. Hines, and her children, Marshall Pearson and Undra Pearson, are not subject to arbitration; I agree with that result because Ms. Hines's husband and her children did not agree to arbitration. A party who does not agree to arbitrate a dispute cannot be compelled to submit that dispute to arbitration. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).
This Court has enforced an arbitration provision against a nonsignatory when the nonsignatory claimed the benefit of the contract containing the arbitration provision but attempted to avoid the application of the arbitration provision. Ex parte Dyess, 709 So.2d 447, 451-52 (Ala.1997). Ms. Hines signed a "retail buyer's order," which set forth the cost of the vehicle and which contained an arbitration provision. In addition to the retail buyer's order, Ms. Hines signed a "retail installment contract" to finance the unpaid balance due on the vehicle. The record gives no indication that Ms. Hines's husband and children are trying to claim the benefit of either the retail buyer's order or the retail installment contract while at the same time seeking to avoid the arbitration provision. Therefore, because their intentional-tort claims are not based on either of these agreements, they are not subject to arbitration.
I dissent, however, from that part of the main opinion that concludes that Ms. Hines's own intentional-tort claims are not subject to arbitration. This Court has stated that "[w]hether an arbitration provision encompasses a party's claims `is a matter of contract interpretation, which interpretation is guided by the intent of the parties, and which intent, absent ambiguity in the clause, is evidenced by the plain language of the clause.'" Green Tree Fin. Corp. of Alabama v. Vintson, 753 So.2d 497, 505 (Ala.1999).
The language of the arbitration provision in this case is plain, clear, and unambiguous. By that plain language, Ms. Hines agreed to arbitrate
"all disputes not barred by applicable statutes of limitations or otherwise barred by law, resulting from or arising out of the sale transaction entered into (including but not limited to the terms of this agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties concerning any goods or services acquired by the purchaser(s)), the condition of the motor vehicle, the conformity of the motor vehicle, the terms of financing in connection therewith...."
Ms. Hines's intentional-tort claims arise out of the defendants' alleged attempts to repossess the car that Ms. Hines had purchased by the retail installment contract; thus, those claims come within the scope of the arbitration provision contained in the retail buyer's order.
The main opinion correctly states that "[a]n arbitration clause cannot be `enforced to require arbitration of a claim alleging an intentional tort that is in no way related to the underlying transaction that gave rise to the arbitration agreement,'" quoting Green Tree Financial Corp. v. Shoemaker, 775 So.2d 149, 151 n. 3 (Ala.2000). However, given the clear language of the arbitration provision"resulting from or arising out of the terms of financing the carI conclude that the efforts the defendants took to collect the debt were a part of the transaction. See Shoemaker, 775 So.2d at 151 ("There can be nothing more `relating to' a financial transaction than the efforts a party takes to collect a debt created as a part of that transaction."). Accordingly, I would hold that the trial court erred in *161 denying the defendants' motion to compel arbitration of Ms. Hines's claims.
I would affirm the trial court's order insofar as it relates to the intentional-tort claims alleged by Ms. Hines's husband and her children. However, because the scope of the arbitration provision is broad enough to encompass Ms. Hines's claims, I would reverse the order insofar as it relates to Ms. Hines's own intentional-tort claims.