975 So.2d 909 (2007)
SERRA CHEVROLET, INC.
v.
Theresa REYLANDER.
1050278.
Supreme Court of Alabama.
June 15, 2007.
Cecil H. Macoy, Jr., and Susan E. McPherson of Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham, for appellant.
Submitted on appellant's brief only.
PER CURIAM.
AFFIRMED. NO OPINION.
See Rule 53(a)(1) and (a)(2)(F), Ala. R.App. P.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
SEE and BOLIN, JJ., dissent.
SEE, Justice (dissenting).
This Court affirms without an opinion the trial court's denial of a motion to compel arbitration filed by Serra Chevrolet, Inc., the defendant below. I respectfully dissent.
On May 15, 2003, Theresa Reylander and her boyfriend visited an automobile dealership operated by Serra Chevrolet to purchase a used automobile for Reylander. Aaron Hardy, one of Serra Chevrolet's salespersons, offered them assistance. Reylander and her boyfriend returned the next day to buy one of the cars they had looked at the previous day, on the condition that Serra Chevrolet would repair the radio antenna, touch up some scratches in the paint, and repair the rear spoiler. That evening, Reylander signed a purchase agreement, which contained an arbitration provision; that provision stated, in pertinent part:
"The undersigned Purchaser and Seller . . . agree as follows:
"(1) That the motor vehicle described in this sale document has been heretofore traveling in interstate commerce and has an impact upon interstate commerce.
"(2) That in the event of any dispute(s) between the parties hereto or in the event of any dispute(s) arising out of or related to this contract, (including but not limited to the terms of the agreement, the condition of the motor vehicle sold, the conformity of the motor vehicle sold to the contract, the representations, promises, undertakings or covenants made by Seller, Inc. in connection with the sale of the motor vehicle, or otherwise dealing with the motor vehicle . . .) that Seller, and the purchaser agree to submit such dispute(s) to binding arbitration, pursuant to the provisions of 9 U.S.C. 1, et seq. and according to the commercial rules of the American Arbitration Association then existing in Alabama.
"(3) That in the event any dispute arises between purchaser and seller, its officers, agents and employees, the said dispute will be submitted to binding arbitration pursuant to 9 U.S.C. 1, et seq. and according to the commercial rules of the American Arbitration Association then existing in Alabama."
Reylander alleges in her complaint that "[w]hile completing the paperwork, [Hardy] engaged a coworker in an inappropriate conversation of a sexual nature in front of [Reylander] and her boyfriend."
*910 Reylander returned to Serra Chevrolet on May 19 and May 20, 2003, to have the repairs to the automobile she had purchased completed. Reylander rode with Hardy to Roebuck Honda to have the radio fixed and to the body shop to have the scratches in the paint fixed. While they were in the car together, Hardy allegedly made a number of unwanted comments of a sexual nature to Reylander and repeatedly touched Reylander in a sexual manner. Reylander sued Hardy, alleging assault and battery, invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment. She also named Serra Chevrolet as a defendant, alleging the negligent hiring and supervision of Hardy and vicarious liability for Hardy's actions. Serra Chevrolet moved to compel arbitration of the claims pursuant to the arbitration provision in the purchase agreement Reylander had signed. The trial court denied Serra Chevrolet's motion, stating that "intentional torts of this nature as a matter of public policy should not be subject to the arbitration clause in this case."
This case is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"). Section 2 of the FAA provides:
"A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2. "The FAA `provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause."'" Wolff Motor Co. v. White, 869 So.2d 1129, 1132 (Ala.2003) (quoting Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003), and Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). In finding a nexus with interstate commerce, we look to the transaction, not the specific action that is the basis of the claim. In Potts v. Baptist Health System, Inc., 853 So.2d 194, 202 (Ala.2002), Caroline Potts, a nurse, sued her employers, Baptist Health System, Inc., and Walker Regional Medical Center ("Walker"), and others, alleging various intentional torts, including "defamation, intentional infliction of emotional distress, invasion of privacy, and wrongful termination." 853 So.2d at 195. Potts had entered into an arbitration agreement with Walker. This Court held that "the FAA applie[d]" to the arbitration agreement between Potts and Walker, not because the defendants established a nexus between Potts's intentional-tort claims and interstate commerce, but because of the relationship between the underlying transaction  her continued employment  and interstate commerce. 853 So.2d at 202.
"It is well established that Congress can regulate three broad categories of activity pursuant to its commerce power: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce or persons or things in interstate commerce; and (3) those general activities having a substantial effect on interstate commerce."
Wolff Motor Co., 869 So.2d at 1132. "The automobile, if anything, is the paradigm of modern interstate commercial activity in the United States. . . . `[C]ars are themselves instrumentalities of commerce.'" United States v. McCoy, 323 F.3d 1114, 1129 (9th Cir.2003) (quoting United States v. Oliver, 60 F.3d 547, 550 (9th Cir.1995)). "[T]he purchase of a used automobile from an automobile dealer [is] a transaction that involve[s] interstate commerce." Dan Wachtel Ford, Lincoln, Mercury, Inc. v. Modas, 891 So.2d 287, 292 (Ala.2004). The *911 arbitration provision in the purchase agreement between Reylander and Serra Chevrolet covers the sale of a used automobile.
The question presented to this Court is whether the arbitration provision encompasses Reylander's claims against Serra Chevrolet alleging the negligent hiring and negligent supervision of Hardy and seeking to hold Serra Chevrolet vicariously liable for the alleged intentional torts of Hardy. The arbitration provision, by its express terms, covers "any dispute(s) between the parties hereto." More specifically, it also covers "any dispute(s) arising out of or related to this contract." Even this narrower
"language of the arbitration provision in this case is not ambiguous. Under the plain language of the provision, [Reylander] agreed to arbitrate all disputes `arising from or relating to' the contract. 'This Court has held [that] where a contract signed by the parties contains a valid arbitration clause that applies to claims "arising out of or relating to" the contract, that clause has a broader application than an arbitration clause that refers only to claims "arising from" the agreement.'"
Green Tree Fin. Corp. of Alabama v. Vintson, 753 So.2d 497, 505 (Ala.1999).
The arbitration provision in the agreement between Reylander and Serra Chevrolet makes no exception for negligent hiring, negligent supervision, or claims asserting vicarious liability for intentional torts  this last being the basis upon which the trial court denied Serra Chevrolet's motion to compel arbitration of all three claims against it. Moreover, "`[t]he federal policy favoring arbitration is so strong that, as a matter of law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . ."'" Parkway Dodge, Inc. v. Hawkins, 854 So.2d 1129, 1132 (Ala.2003) (quoting Ameriquest Mortgage Co. v. Bentley, 851 So.2d 458, 463 (Ala.2002), quoting in turn Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Thus, Reylander's claims fall squarely within the purview of this "broadly worded agreement." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kilgore, 751 So.2d 8, 11 (Ala.1999).
In Green Tree Financial Corp. v. Vintson, the Vintsons asserted intentional-tort claims, and they argued that the arbitration clause they had signed did not encompass such claims. This Court held that
"[a]ll of the Vintsons' claims  that Green Tree fraudulently induced them to purchase a mobile home, that it violated the Alabama Mini-Code, and that it breached its agreement to pay off several preexisting debts  arise from or relate to the installment contract. In fact, the Vintsons concede as much in their brief, when they state that their complaint was based on `fraud relating to this transaction.' Accordingly, the plain language of the arbitration provision encompasses the Vintsons' claims."
753 So.2d at 505. Similarly, in this case, Reylander's claims against Serra Chevrolet alleging negligent hiring and negligent supervision and seeking to hold Serra Chevrolet vicariously liable for Hardy's actions relate to the purchase agreement. In Green Tree Financial the Vintsons conceded that their action was related to the transaction as to which they had signed the arbitration clause; similarly, Reylander asserts in her complaint that Serra Chevrolet "owed a duty to its employees and customers to ensure that its employees, agents and servants were adequately trained, educated and supervised so as not to act in an inappropriate manner with other employees or customers." By referring *912 to herself as a customer, Reylander concedes that her claims against Serra Chevrolet are related to her purchase of an automobile from Serra Chevrolet. See also Potts v. Baptist Health Sys., Inc., 853 So.2d at 202 (holding that the arbitration agreement was enforceable in cases invoking intentional-tort claims brought by a nurse against her hospital-employer).
The dispute
"aris[es] out of or [is] related to [the] contract, (including but not limited to the terms of the agreement, the condition of the motor vehicle sold, the conformity of the motor vehicle sold to the contract, the representations, promises, undertakings or covenants made by Seller, Inc. in connection with the sale of the motor vehicle, or otherwise dealing with the motor vehicle . . . )."
Hardy was driving Reylander to have the automobile she had purchased repaired in accordance with the terms of the purchase agreement when he allegedly harassed her sexually. Reylander's claims against Serra Chevrolet thus "arise directly out of her purchase transaction with [Serra Chevrolet]." Dan Wachtel Ford, Lincoln, Mercury, Inc., 891 So.2d at 293. Serra Chevrolet's agreement to have the automobile repaired "was part of the negotiations involved in the purchase and financing of the [automobile]. Thus the language used in the arbitration agreement[ ] is broad enough to encompass [Reylander's] claims." Ex parte Bill Heard Chevrolet, Inc., 927 So.2d 792, 802 (Ala.2005). This case is governed by our analysis in Green Tree Financial, and the arbitration provision in this case covers Reylander's claims against Serra Chevrolet alleging negligent hiring and negligent supervision and asserting vicarious liability.
In the trial court, Reylander cited Fountain Finance, Inc. v. Hines, 788 So.2d 155, 158 (Ala.2000), in which Lavonne Hines and others sued Fountain Finance, Inc., and Jim Skinner Ford, Inc., alleging "various intentional torts, all arising out of an apparently serious altercation on the Hines property `in the early morning hours' of July 7, 1999." 788 So.2d at 158. Fountain Finance and Jim Skinner Ford moved to compel arbitration pursuant to an arbitration agreement Hines allegedly had signed when she purchased a car from Jim Skinner Ford. The purchase contract was later assigned to Fountain Finance. Although the arbitration agreement was a broad one, it applied only to disputes "resulting from or arising out of the sale transaction." 788 So.2d at 160 (See, J., concurring in part and dissenting in part). Fountain Finance and Jim Skinner Ford did not show that the altercation that occurred on the Hineses' property had anything to do with the purchase of the car; thus, "they failed to satisfy their burden of proof on the question whether the arbitration agreement covered the plaintiffs' claims."[1] 788 So.2d at 159. Where the arbitration agreement requires a nexus, it "cannot be `enforced to require arbitration of a claim alleging an intentional tort that in no way relates to the underlying transaction that gave rise to the arbitration agreement.' Green Tree Fin. Corp. v. Shoemaker, 775 So.2d 149, 151 n. 3 (Ala. 2000)."[2]Fountain Finance, Inc., 788 *913 So.2d at 158. The case before us, unlike Fountain Finance, expressly involves claims that clearly fall within the unambiguous language of the arbitration provision.
The present case involves an arbitration provision that is "broad enough" to encompass Reylander's claims against Serra Chevrolet, including the intentional-tort claims, and "[w]hether an arbitration provision encompasses a party's claims is a matter of contract interpretation. That interpretation is guided by the intent of the parties, which, absent ambiguity in the arbitration provision, is evidenced by the plain language of the provision." Ex parte Discount Foods, Inc., 789 So.2d 842, 844 (Ala.2001). We are compelled when interpreting arbitration agreements to apply the same rules of contract interpretation that we apply to all other contract provisions.[3] The Supreme Court of the United States tells us that "Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed `upon the same footing as other contracts.'" Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). Moreover, "`"any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . ."'" Parkway Dodge, 854 So.2d at 1132. The arbitration provision in this case covers "any dispute" between Reylander and Serra Chevrolet "arising out of or related to this contract."
I would reverse the trial court's denial of Serra Chevrolet's motion to compel arbitration. Therefore, I dissent.
BOLIN, J., concurs.
NOTES
[1] Although Fountain Finance and Jim Skinner Ford stated that the claims arose out of a repossession of the automobile the purchase of which was the subject of the arbitration agreement, this Court noted that "`[m]otions and arguments of counsel are not evidence'" and that the only evidence of record was an affidavit that "conspicuously fail[ed] to address the factual basis out of which the plaintiffs' claims arise." 788 So.2d at 159.
[2] Note 3 in Green Tree Financial Corp. v. Shoemaker says: "At best, this case and Vintson have severely limited the holding in Ex parte Discount Foods [, Inc., 789 So.2d 842 (Ala.2001)]. Ex parte Discount Foods can now stand only for the proposition that an arbitration clause should not be enforced to require arbitration of a claim alleging an intentional tort that is in no way related to the underlying transaction that gave rise to the arbitration agreement." In Ex parte Discount Foods, Inc., 789 So.2d 842, 845-46 (Ala.2001), this Court specifically "disapprove[d]" the principle "that intentional torts unrelated to the underlying transaction that gave rise to the arbitration agreement can never be encompassed in a broad arbitration provision." We held that a "broad enough" arbitration provision may encompass "even those claims based on allegations of wrongful intentional conduct that does not relate to the contract containing the arbitration provision." 789 So.2d at 846 (footnote omitted).
[3] As this Court recently stated:

"The freedom of parties to contract is an important public policy written into the state constitution and adopted by the people of Alabama. It is a significant liberty interest that is expressly protected in the constitution. This Court has recognized that `"the state constitution protects contractual obligations from impairment by the legislature or the judiciary, and the right of freedom of contract is a cherished one that courts are bound to protect."' Ex parte Life Ins. Co. of Georgia, 810 So.2d 744, 751 (Ala.2001) (quoting Sutton v. Epperson, 631 So.2d 832, 835 (Ala.1993)).
"`Even under what may seem to be the most compelling circumstances, [courts] may not "refine away the terms of the contract that are expressed with sufficient clarity to convey the intent and meaning of the parties." Kinnon v. Universal Underwriters Ins. Co., 418 So.2d [887,] 888 [(Ala.1982)]. "It is not a function of the courts to make new contracts for the parties, or raise doubts where none exist." Commercial Union Ins. Co. v. Rose's Stores, 411 So.2d 122, 124 (Ala.1982).'"
Title Max of Birmingham, Inc. v. Edwards, 973 So.2d 1050, 1055 n. 1 (Ala.2007) (quoting Johnson v. Cervera, 508 So.2d 257, 259 (Ala. 1987)).