SHAW, Justice.
Bank of America, N.A.; Banc of America Investment Services, LLC; JPMorgan Chase & Company; J.P. Morgan Securities; Bear Stearns Funding, Inc.; RBC Bank (USA); Gardner-Michael Capital, Inc.; The Bank of New York Mellon; and Peck, Shaffer & Williams, LLP (hereinafter referred to collectively as “the petitioners”), all defendants in a putative class action pending in the trial court, petition this Court for a writ of mandamus directing the trial judge, the Honorable Albert L. Johnson, to recuse himself from presiding over this action. We deny the petition.
The representative plaintiff below, Charles E. Wilson, is a resident of Jefferson County. On June 17, 2008, he filed a class-action complaint in the Jefferson Circuit Court alleging wrongdoing by various financial institutions, government officials, and other parties concerning the issuance and handling of debt related to the sewer system in Jefferson County (“the sewer system”). The complaint sought certification of a class consisting of all users and ratepayers of the sewer system. The complaint further alleged:
“The genesis of this civil action can ... be traced to the series of events over the last eleven to fifteen years where the Jefferson County Commissioners, various investment banks, insurers and advisors have continuously failed to act in the best interests of the citizens of Jefferson County. Through a long series of ill-conceived financial transactions, the sewer ratepayers of Jefferson County have been saddled with a debt of roughly $11,491 per residential sewer *115 customer, which is the highest in the nation. Also, the sewer ratepayers have seen exponential growth, an increase of 329%, in their sewer rates in the last eleven years — Charles Wilson, on behalf of himself and all other sewer ratepayers, citizens and residents of Jefferson County, brings this suit in order to challenge the misappropriation and/or misapplication of public funds based upon his and his fellow citizens and residents respective equitable ownership in such funds, and their liability to replenish the public treasury for any deficiency. Further, as the Plaintiff and the members of this purported class also have a pecuniary interest, Plaintiffs bring suit to recover monetary damages for the losses they have sustained due to Defendants’ wrongful conduct and dereliction of duties, which has directly caused or contributed to the wrongful increases in their sewer rates. Finally, and importantly, Plaintiffs wish to rectify the daunting and precarious financial position that has been thrust upon them by the Defendants in this case and to ensure that sewer funds do not continue to be diverted from their purpose of maintaining, supporting and/or expanding the available sewer service.”
The complaint seeks, among other things, the following relief:
“A. That this Honorable Court determine that this action may be maintained as a class action under Rule 23 of the Alabama Rules of Civil Procedure;
“B. That judgment be entered for Plaintiffs and members of the Class against Defendants for monetary damages sustained by Plaintiffs as a result of the herein described wrongful conduct and actions between 1993 and 2008;
“C. That judgment be entered for Plaintiffs and members of the Class against Defendants for the disgorgement of fees, kickbacks and premiums received by Defendants as a result of the herein described wrongful conduct and actions between 1993 and 2008;
“D. That the Court award injunctive relief against Defendants and prevent future excessive fees from being paid and that this Court set-aside the transactions that are made the basis of this case as all were entered into in contravention of Alabama law;
“E. That the Court award injunctive relief in the form of the disgorgement of fees, kickbacks and premiums received by Defendants as a result of the herein described wrongful conduct and actions between 1993 and 2008;
“F. That the Plaintiffs and the Class be awarded interest at the highest legal rate available under law related to excessive fees and kickbacks;
“G. That attorney for Plaintiffs be awarded attorney’s fees; and
“H. That the Plaintiffs and members of the Class have such other, further or different relief as the case may require and the Court may deem just and proper under the circumstances.”
All the circuit judges in the Tenth Judicial Circuit recused themselves in the case. The Honorable William Gordon, a retired circuit judge in the Fifteenth Judicial Circuit, was appointed to hear the case, but he subsequently recused himself. The Honorable Albert L. Johnson of the Twenty-Sixth Judicial Circuit was thus appointed to hear the case. At a status conference, Judge Johnson disclosed the fact that his adult daughter was a resident of Jefferson County and raised the issue whether his recusal was required. Judge Johnson stated at the conference:
“I have a daughter who lives in Jefferson County, but she’s not on the Jefferson County Sewer System. Now, to be disqualified, if I’m reading the [Canons] *116 of Judicial Ethics correctly, there would have to be a substantial interest, and this is something I want everybody to give me a little feedback on. Being that my daughter is not a ratepayer for the Jefferson County Sewer System, and I can understand that perhaps based on the complaint if that allegation is proven to be true, that there’s an 11,000 plus dollar, you might say, debt, that each ratepayer has, I would determine that as substantial. But as of this date, the Jefferson County Taxpayers have not been assessed anything that I can find. I don’t know if they shall be assessed anything. I don’t know what the future holds in those regards. So then, does my daughter have a substantial interest? Now, if she does, I’m disqualified. If she doesn’t, I’m not.”
Judge Johnson further indicated that his daughter was a customer of the “Bessemer Water System.”
On February 10, 2009, several defendants filed a motion requesting that Judge Johnson recuse himself. Specifically, the motion asserted:
“2. After the recess of that initial status conference, inquiries by counsel for one of the defendants indicated that customers of the Bessemer Water System were, in fact, connected to the Jefferson County Sewer System and were charged rates for that sewer service by Jefferson County but were invoiced in the name of the Bessemer Water System. Counsel was uncertain whether [Judge Johnson’s] daughter and her spouse are unknowing sewer customers of Jefferson County or whether instead their homesite might be served by another sewer system or even a septic system. Counsel did not initially know the name of [Judge Johnson’s] daughter and her spouse but realized that the Court’s Statement of Economic Interests would contain that public disclosure.
“3. Having been alerted by this Court’s proactive disclosures to the potential problem, the Movants were readily able to establish through routine public sources that [Judge Johnson’s] daughter and her spouse are users and ratepayers of the Jefferson County Sewer System.”
The. motion further alleged that the trial judge’s daughter was a member of the putative class:
“6. Accordingly, the daughter of Judge Albert L. Johnson to whom this case has been assigned, and her spouse are members of the Ratepayer Class. Should the Ratepayer Class be certified and damages recovered, [Judge Johnson’s] daughter and her spouse would be the recipients of a damages recovery. Should the requested injunctive relief precluding increases in rate charges be granted, regardless of whether it is obtained by a class or individual Plaintiffs, [Judge Johnson’s] daughter and her spouse will be the beneficiaries of any resulting limitation on future increases in monthly sewer charges.
“7. [Judge Johnson’s] daughter and her spouse cannot eliminate their interests in the outcome of these proceedings by opting out of a class should one be certified. All injunctive relief sought by Plaintiffs would inure to their benefit regardless of any opt out on their part.”
The motion thus sought to have Judge Johnson recuse himself from the case on the basis of Canon 3.C., Alabama Canons of Judicial Ethics. On April 6, 2009, Judge Johnson entered an order denying the defendants’ motion to recuse but ordered the case stayed pending review of his decision. The petitioners then sought mandamus review.
*117 The issue of recusal may properly be raised in a petition for a writ of mandamus. Ex parte Crawford, 686 So.2d 196, 198 (Ala.1996). “The writ of mandamus is an extraordinary remedy which should be granted only when it is clear that the trial court abused its discretion.” Ex parte Rollins, 495 So.2d 636, 638 (Ala. 1986). Further, “ ‘[t]he burden of proof is on the party seeking recusal.’ ” Ex parte City of Dothan Personnel Bd., 831 So.2d 1, 9 (Ala.2002) (quoting Ex parte Cotton, 638 So.2d 870, 872 (Ala.1994)).
“The standard for recusal is an objective one: whether a reasonable person knowing everything that the judge knows would have a ‘reasonable basis for questioning the judge’s impartiality.’ [Ex parte Cotton, 638 So.2d 870, 872 (Ala.1994)]. The focus of our inquiry, therefore, is not whether a particular judge is or is not biased toward the petitioner; the focus is instead on whether a reasonable person would perceive potential bias or a lack of impartiality on the part of the judge in question.”
Ex parte Bryant, 682 So.2d 39, 41 (Ala.1996).
The petitioners maintain that Judge Johnson should recuse himself based on Canon 3.C(1)(d). That Canon provides, in pertinent part:
“C. Disqualification:
“(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
[[Image here]]
“(d) He or his spouse, or a person within the fourth degree of relationship to either of them, or the spouse of such a person:
“(i) Is named a party to the proceeding, or an officer, director, or trustee of a party;
“(ii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding....”
The petitioners note that the compiaint alleges that the sewer system owes a debt that, when prorated among its ratepayers, amounts to $11,491 for each residential customer and that the complaint seeks monetary damages and “disgorgement” of funds received as a result of the defendants’ alleged misconduct. The petitioners thus contend that the action seeks a “lump sum reimbursement” or a “lump-sum monetary damages claim” and that Judge Johnson’s daughter may thus be entitled to receive up to $11,491 in damages, which the petitioners argue clearly represents an “interest” in this case.
• However, it is unclear whether Judge Johnson’s daughter would be entitled to such a damages award in this case. The petitioners state that the daughter had moved to Jefferson County and had been a ratepayer for only 10 months. It is thus unclear on what legal basis the daughter, as a class member, would be entitled to a “lump sum reimbursement” of allegedly excessive fees paid by other residential customers since 1993.[1] If this action were successful, it seems clear that, as a ratepayer, the daughter would be likely to receive some sort of monetary relief. That said, the parties have offered no means by which to calculate the amount of such possible award.
*118 In any event, the petitioners argue, Judge Johnson’s daughter would still benefit from the injunctive relief sought in this case, even if she were to opt out of the class. The petitioners state that “[ejven if the $11,491 in sewer debt per ratepayer was not in issue, the injunction sought by Plaintiffs prohibiting rate increases will certainly provide a substantial monetary benefit” to Judge Johnson’s daughter. In support of this, the petitioners argue:
“According to the website for the Jefferson County Office of Sewer Service, the current sewer rate is $9.89 per 1,000 gallons of water used; thus the rate before the 329% increase would have been $3 per 1,000 gallons of water used. Assuming that the average household in Jefferson County has 2.4 persons, and that the average person uses 80 gallons of water per day, the average household uses around 5,800 gallons of water per month. This translates to a difference of almost $40 per month — from approximately $17 per month at the pre-in-crease rate eleven years ago as compared to the approximately $57 per month rate in 2008. Alternatively, this translates into an average increase of approximately 11% per year over the past eleven years. If the requested injunction prevented future increases of 11% per year, over the course of one year the average family would save around $6/month, or $72 for the year. The savings for the following year would be around $12/month, which translates to $216 for the two years combined. In the third year, the savings would be around $20/month, translating to over $450 over just three years.”
(Citations to Internet Web sites omitted.)
Several advisory opinions issued by the Alabama Judicial Inquiry Commission (“JIC”) discuss analogous situations.[2] In Advisory Opinion No. 91-434, JIC was asked whether, in a class action by customers of a utility, a judge who would be a class member was disqualified from presiding over the case. JIC stated that the judge should be disqualified if
“the outcome of the civil proceeding could substantially affect [his] interest as a customer of the utility.
“‘Although being a rate payer does not involve “ownership of a legal or equitable interest” in the party to whom the judge made such payments, the committee concluded that at some point a relationship to a party as a utility customer ... should disqualify a judge. The test is that a judge should disqualify himself if the outcome of the proceeding could substantially affect his interest as a customer of the utility....’
“In re Virginia [Electric & Power Co.], 539 F.2d [357,] 368 [(4th Cir.1976)], quoting E. Thode, Reporter’s Notes to Code of Judicial Conduct at 66-67 (1973). In In re New Mexico [Natural Gas Antitrust Litigation], 620 F.2d [794,] 796 [(10th Cir.1980)], the judge’s gas bill would be lowered by $31 per year if the plaintiffs were successful. In In re Virginia, 539 F.2d at 368, the potential existed that the judge might save up to $100 over the next 40 years.
“In determining whether [a judge has] an interest that could be ‘substantially affected’ by the outcome of the civil action, [he] should consider any benefit [he] will receive if the plaintiffs are successful, whether that benefit is such that a reasonable person may question [his] impartiality, and the remoteness of the *119 interest and its extent or degree. L. Abramson, Judicial Disqualification Under Canon 3C of the Code of Judicial Conduct at 64-65 (American Judicature Society, 1986).”[3]
See also JIC Advisory Opinion No. 98-697 (stating that a judge was not required to recuse himself in a case that could result in the judge’s being refunded a small fee assessed by a governmental entity and that “the judge is not disqualified to hear the action in question unless the outcome of the proceeding could substantially affect his interest as a property owner”). Further, we note that the fact that a judge may have an interest in a proceeding as a resident “in common with other residents is not an interest contemplated by the disqualification provisions in Canon 3C.” JIC Advisory Opinion No. 95-585. See also JIC Advisory Opinion No. 92-445 (stating that, because an interest a judge holds in common with the public at large is not itself disqualifying, the fact that a judge may be subject to an electric-meter-user fee and a license-plate-renewal fee was not a basis for disqualification in a case challenging the passage of ordinances authorizing such fees).
No evidentiary exhibits are attached to the petition for the writ of mandamus in this case; instead, copies of various hearing transcripts, pleadings, and authorities have been filed.[4] Although it appears undisputed that Judge Johnson’s daughter lives in Jefferson County and is a customer of the Bessemer Sewer System (which is alleged to be part of the sewer system), the assertions found in the pleadings before us are not evidence. Fountain Fin., Inc. v. Hines, 788 So.2d 155, 159 (Ala.2000) (“ ‘[m]otions and arguments of counsel are not evidence.’ Williams v. Akzo Nobel Chems., Inc., 999 S.W.2d 836, 845 (Tex. App.1999). ‘[S]tatements in motions are not evidence and are therefore not entitled to evidentiary weight.’ Singh v. Immigration & Naturalization Serv., 213 F.3d 1050, 1054 n. 8 (9th Cir.2000).”).
As noted above, it is unclear to this Court the exact amount of damages the daughter could recover in this case. Judge Johnson believed that his daughter moved to her current residence sometime in 2008 — the year the class action was filed — but no evidence establishes the exact date. Counsel for the plaintiffs expressed concern at the hearing on the motion to recuse that the daughter may not even fall within the class period — the action was filed in June 2008 and seeks damages only for actions up to that point. Because this Court is not provided the date on which Judge Johnson’s daughter moved to Jefferson County, we cannot determine if she is a ratepayer in this action. Finally, the basis for the petitioners’ conclusion that injunctive relief in this case would benefit the daughter by $450 over a three-year period is not supported by evidence submitted to the trial court.[5]
“The necessity for recusal is evaluated by the ‘totality of the facts’ and circumstances in each case. Dothan Pers. Bd., 831 So.2d at 2. The test is whether “‘facts are shown which make it reasonable for members of the public or a party, or counsel opposed to question the impartiality of the judge.” ’ ” Ex parte George, 962 So.2d 789, 791 (Ala.2006) (quoting In re Sheffield, 465 So.2d 350, 355-56 (Ala. *120 1984), quoting in turn Acromag-Viking v. Blalock, 420 So.2d 60, 61 (Ala.1982) (emphasis added)). “Recusal is not required where there is not substantial evidence to support an accusation of bias. ” Ford v. Ford, 412 So.2d 789, 791 (Ala.Civ.App. 1982) (emphasis added).
“ ‘[T]he law will not suppose a possibility of bias or favor in a judge who is already sworn to administer impartial justice and whose authority greatly depends upon that presumption and idea.’” Ex parte Balogun, 516 So.2d 606, 609 (Ala.1987) (quoting Fulton v. Longshore, 156 Ala. 611, 613, 46 So. 989, 990 (1908)). Assuming the ultimate success of this class action, no evidence has been submitted in support of this petition establishing: (1) that Judge Johnson’s daughter was a ratepayer of the sewer system during the period covered by this action, (2) that there exists any reasonable basis for quantifying the amount of damages, she would be entitled to receive as a class member, or (8) that there exists any reasonable basis for quantifying the monetary benefit to her as a result of the requested injunctive relief. As previously noted, mandamus will lie to compel a judge’s recusal only when there is sufficient evidence to call into question the impartiality of the judge. At some point in the future litigation of this case the trial judge may become apprised of facts requiring his recusal under Canon 3; such facts, however, have not been demonstrated to this Court on mandamus review. Therefore, the petition is denied.
PETITION DENIED.
COBB, C.J., and LYONS, STUART, and PARKER, JJ., concur.
WOODALL, SMITH, BOLIN, and MURDOCK, JJ., recuse themselves.

. At the hearing on the motion to recuse, counsel for the plaintiffs indicated that "the plaintiffs have never claimed and are not claiming in this case that each plaintiff or ratepayer receive a check for $11,500. Again, Judge, that’s debt load, based on the debt that’s accumulated.”

. This Court will consider an advisory opinion of JIC, but those opinions are not binding on this Court. City of Bessemer v. McClain, 957 So.2d 1061, 1088 (Ala.2006).

. No information was provided to JIC concerning the size of any benefit the judge to whom Advisory Opinion No. 91-434 was directed could receive.

. Although the petitioners indicated in the trial court that they intended to file some exhibits under seal, those exhibits have not been included with their petition to this Court.

.The authority for the petitioners' figure consists of citations to two Internet Web sites.